BRIERE, APPELLEE, *v.* THE LATHROP CO., APPELLANT.

[Cite as Briere v. Lathrop Co. (1970), 22 Ohio St. 2d 166.]

(No. 68-703—Decided May 13, 1970.)

170

*Mr. Frank Leonetti,* for appellee.
*Messrs. Hauxhurst, Sharp. Mollison & Gallagher, Mr. Michael R. Gallagher* and *Mr. John B. Robertson,* for appellant.

DUNCAN, J.  The extent of our review is whether the jury's verdict, as enlightened by its answer to the interroga-

tory quoted in the statement of facts, rests within legally fair confines established by the pleadings, evidence, and the court's instructions.

Plaintiff's petition alleges defendant's carelessness and negligence in causing the scaffold he was using to go into an unguarded pit, topple, and cause plaintiff's injuries resulting from a fall. Plaintiff further specifically set forth a number of allegations generally sounding in the assertion that defendant failed to provide for him a safe place to work. In *Wellman* v. *East Ohio Gas Co.*, 160 Ohio St. 103, this court held in paragraph one of the syllabus:

"Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor."

A review of the facts concerning the relationship between Briere and the Lathrop Company shows nothing to require the application of a rule different from that announced in the *Wellman case.* Moreover, the jury's specific identification of defendant's negligence removes the alleged unsafe condition of the premises from our consideration. That finding makes unnecessary a discussion of the availability of the doctrine of assumption of risk in the context of actions where a failure of an employer to maintain a safe place to work is claimed, although the doctrine will be discussed hereinafter in another context.

Plaintiff urges that once defendant's employee voluntarily began assisting in the moving of the scaffold, he had a duty to exercise due care in performing the act of assistance. He argues that the jury found due care wanting when Smith left the place of the accident without informing Lilly, the "pusher" at the other end, and that such an omission is negligence which, in this instance, is consistent with the jury's verdict, the evidence, and the allegations of the petition.

To the contrary, defendant argues that the jury's

answer to the interrogatory inquiring as to the nature of the defendant's negligence, if any, exonerated defendant. Defendant argues that after the scaffold was moved with Smith's assistance and had come to rest, Lilly was negligent in pushing the scaffold into the pit and that his intervening negligence proximately caused plaintiff's injuries.

The question of whether Smith's leaving the scene without warning Lilly was negligence for which Lathrop must respond, or whether Lilly's allegedly negligent act proximately caused the accident thus negating a finding of negligence against Smith and Lathrop, were questions of fact to be determined by the jury under proper instructions regarding proximate cause and ordinary care. The jury, by its answer to the interrogatory, in effect found that a reasonably prudent man exercising reasonable care for the protection of others would not, under the same or similar circumstances, consider the act of voluntary assistance complete until the warning was given. A number of cases hold that a voluntary act gratuitously undertaken must be *completely* performed with the exercise of due care under the circumstances. See *Indian Towing Co.* v. *United States,* 350 U. S. 61; *Northwest Airlines* v. *Glenn L. Martin Co.,* 224 F. 2d 120, certiorari denied, 350 U. S. 937; *Abresch* v. *Northwestern Bell Tel. Co.,* 246 Minn. 408, 75 N. W. 2d 206; *Nelson* v. *Union Wire Rope Corp.,* 31 Ill. 2d 69, 199 N. E. 2d 769; *Sweet* v. *Ringwelski,* 362 Mich. 138, 106 N. W. 2d 742. See, also, 2 Restatement of Law, Torts, 2d Section 323.

Since defendant's employee Smith was charged with a duty, the specific acts necessary to fulfill that duty, as well as the inferences and conclusions to be drawn from the evidence, were jury questions. See *St. Mary's Gas Co.* v. *Brodbeck,* 114 Ohio St. 423, paragraph two of the syllabus; *Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St. 469, paragraph four of the syllabus. As this court said in *Colarossi* v. *Anderson Concrete Corp.,* 175 Ohio St. 321, at 323: "When the conduct of a party is once ascertained, the question whether it came up to the standard of reasonable care prescribed by the law ordinarily must be decided as a matter of fact."

Defendant invites attention to the case *Masters* v. *New York Central Rd. Co.*, 147 Ohio St. 293, paragraph two of the syllabus of which reads as follows:

"An interrogatory requiring the jury in a personal injury action, in the event the jury finds the defendant guilty of negligence, to specify the act or acts of negligence is a proper inquiry; and the failure or inability of the jury to find the existence of a claimed act of negligence, in answer to interrogatories so submitted, is equivalent to a finding on such claim of negligence against the party having the burden to establish it."

The essence of defendant's contention with regard to the *Masters case* is that the jury's determination that defendant's employee's actionable negligence consisted of "failure to warn" also amounted to a finding in *favor of* defendant on all other specific allegations of negligence.

We agree with the holding in the *Masters case*. However, in the instant case we do not find that its application results in judgment for defendant. In the *Masters case*, the jury's response to an interrogatory revealed that defendant was negligent in two respects, neither of which amounted to the willful or wanton misconduct which was a necessary finding to plaintiff's recovery. The court correctly found that a description of defendant's specific acts of negligence by the jury negated a finding for plaintiff on the other specific acts of negligence which would have amounted to the necessary willful or wanton misconduct.

In the case at bar, plaintiff's petition alleges generally that defendant's carelessness and negligence caused the scaffolding to go into the pit, and, *inter alia*, specifically alleges, as follows:

"In directing the placement of the scaffold on which plaintiff was working at a position in close proximity to the openings in said floor hereinbefore mentioned, with knowledge that said scaffolding would, in all probability, fall into said openings, causing workmen using said scaffolding to be precipitated to the floor."

In the light of the jury's answer to the interrogatory, we cannot conclude that the jury's result varied from the

pleadings and proof to such an extent that prejudice arose abrogating fairness to the defendant.

Defendant contends that the questions of contributory negligence and assumption of the risk were so clear that they should not have been submitted to the jury, but rather should have been decided for defendant as a matter of law and recognized as a complete defense.

As to contributory negligence, defendant contends that the evidence of open and obvious pits in the floor was known to plaintiff and his acquiescence in having the scaffold moved while he remained on it, constituted contributory negligence as a matter of law. We do not agree.

Laux, superintendent of Lathrop Company, testified on cross-examination concerning riding a rolling scaffold as follows:

"Q. What is the rule, based on custom of the trade, sir, and practice, with respect to riding on rolling scaffolds? A. We do not want people to ride scaffolds when they are being moved.

"Q. All right then your answer is scaffolds should not be ridden when they're being moved, is that right? A. That's right."

Plaintiff testified that he customarily stayed on the scaffold when it was being moved.

Plaintiff's witness, Reilly, testified:

"Q. Well, what I am trying to find out is whether or not the procedure is for the men to come down as the scaffold is being moved? A. No."

It was the jury's duty to evaluate the credibility of the witnesses, weigh all the evidence in light of all the surrounding circumstances, and to determine whether plaintiff was negligent. Where, in a negligence action reasonable minds may reach different conclusions as to whether plaintiff himself was negligent, the plaintiff cannot be held to be contributorily negligent as a matter of law. *Smith* v. *Toledo & Ohio Central Rd. Co.*, 133 Ohio St. 587.

Similar reasoning shows the fallacy of defendant's assumption of risk contention. Assumption of the risk requires three elements: One must have full knowledge of a

condition; such condition must be patently dangerous to him; and he must voluntarily expose himself to the hazard created. *Masters* v *New York Central Rd. Co.*, 147 Ohio St. 293. See *Wever* v. *Hicks*, 11 Ohio St. 2d 230. Defendant's contention that the obvious nature of the pits and plaintiff's acquiescence conclusively show assumption of the risk assumes the element that it was dangerous to remain on a scaffold being moved between open pits. The evidence presented did not, as a matter of law, show assumption of the risk because there was conflicting evidence concerning the aforementioned elements. Therefore, submission to the jury was proper in order for the jury to decide whether the evidence supported an inference as to the assumed element. The verdict shows that the jury failed to find the existence of that element.

Defendant contends that the trial court erred in not admitting in evidence suggested safety rules published by the Steel Scaffolding and Shoring Institute which recommend that men not stay aloft while a scaffolding is moved. We have examined many of the cases cited by the defendant and find that they are distinguishable. In some of the cases the published standards were admitted in conjunction with expert testimony and served only as further evidence to support expert opinion from the witness stand. *E. g., McComish* v. *DeSoi,* 42 N. J. 274, 200 A. 2d 116; *Miller* v. *MacAlester College,* 262 Minn. 418, 115 N. W. 2d 666; *Sage* v. *Northern Pac. Ry. Co.,* 62 Wash. 2d 6, 380 P. 2d 856. In another case, the admissibility of the standards was not in issue. *Blytheville Cotton Oil Co.* v. *Kurn,* 155 F. 2d 467. In still another case, the party against whom the evidence would bear admitted the truthfulness and applicability of the standards on the witness stand. *Stone* v. *Proctor,* 259 N. C. 633, 131 S. E. 2d 297. *Cf. Burks* v. *Christ Hospital,* 19 Ohio St. 2d 128.

In the instant case, the trial judge did not err in refusing to allow the admission of the offered standards as proof of prudent conduct. It is within the court's discretion to determine whether safety rules regarding the use of scaffolding, promulgated and published by a private

association, are to be admitted in evidence, after consideration of manner in which the rules were prepared and the extent of adherence to the rules as a custom of the trade or industry. In light of the conflicting testimony about industry adherence to the proferred rules, we cannot say that the trial judge erred in not admitting the rules in evidence.

Moreover, the testimonial sponsor of the recommendations was the secretary of the promulgating committee. He could vouch for nothing more than that the printed sheets offered were an accurate reproduction of the rule and that they had been distributed to company members of the Steel Scaffolding and Shoring Institute.

We also find defendant's objection to the court's refusal to issue certain special instructions concerning assumption of the risk not well taken. While it is a court's duty to give a requested special instruction which is pertinent to an issue and correctly states the law, *e. g., Chesrown* v. *Bevier*, 101 Ohio St. 282, paragraph two of syllabus; *Bradley* v. *Mansfield Rapid Transit*, 154 Ohio St. 154, paragraph five of syllabus (both cases, but not the paragraphs of the syllabi relied upon above, partially overruled in *Bahm* v. *Pittsburgh & Lake Erie Rd. Co.*, 6 Ohio St. 2d 192), the court is not required to grant a request which is merely repetitive of other special instructions. An examination of the record reveals that the substance of the refused instructions was either given in other special instructions or that they contained facts upon which no evidence was presented and did not fit the facts of the case. See discussion of assumption of the risk, *supra*.

In a similar vein, the interrogatories requesting the jury's findings concerning plaintiff's knowledge of a dangerous condition were properly refused. Those interrogatories assumed the existence of a dangerous condition. Such existence was disputed and, without asking the jury to first find the existence of the disputed facts, the defendant could not ask it to answer an interrogatory which assumed the disputed facts to be true. See *Bradley* v. *Mansfield Rapid Transit, supra,* paragraph three of syllabus.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT and DOYLE, JJ., concur.*
MATTHIAS, J., not participating.

DOYLE, J., of the Ninth Appellate District, sitting for
CORRIGAN, J.

SCHNEIDER, J., concurring generally, with the exception
of paragraph five of the syllabus. I prefer a rule which
would eliminate the discretion of the trial court. Such a
rule should be formulated wherever possible as a means of
removing confusion and uncertainty upon the part of coun-
sel and the trial judge.

Safety rules promulgated by a committee of manage-
ment, or labor, ought not to be admissible as a standard of
care (see *Mississippi Power & Light Co.* v. *Whitescarver,*
68 F. 2d 928, 930-931) unless it can be shown that their
import was a part of the custom of the trade or industry
well known to those engaged therein. *Morris* v. *Cleveland
Hockey Club*, 157 Ohio St. 225, and *Ault* v. *Hall*, 119 Ohio
St. 422.