OPINION
{¶ 1} Appellants, Arthur and Mae Williams, appeal from the final judgment of the Trumbull County Court of Common Pleas following a jury trial resulting in a jury verdict in appellees', John Guarnieri and Western Reserve Insurance, favor. The following facts were adduced at trial:
 {¶ 2} In 1997 appellee, John Guarnieri was contacted by appellants who were seeking a "short-term" investment with a "good rate of interest." Appellee suggested appellants invest in a promissory note which entailed becoming a "lender" to start-up companies. The notes would mature after nine months upon which the holder of the note would receive his or her investment return at an interest rate of 10.5%. At trial, appellants testified that appellee assured them investing in such notes is "absolutely safe;" however, appellee testified he never made such a representation and, in fact, underscored the risk inherent in any investment.
 {¶ 3} Appellants decided to purchase a promissory note from a company known as Sebastian International. Appellants invested $30,000 in the Sebastian note. The note matured after nine-months and appellants received their initial investment plus interest. Several months later, in July of 1998, the parties again met to arrange a similar investment. Appellants determined they would invest $50,000 in a fledgling company doing business as Sun Broadcasting. The note was issued for nine-months with an interest rate of 10.9%. Prior to finalizing the investment, appellee confirmed that the Sun Broadcasting note was bonded by a company called "Global."
 {¶ 4} However, before appellants received their investment return, Sun Broadcasting filed for bankruptcy thereby failing to honor the note. The company bonding the note also failed to pay. In effect, appellants lost their entire investment.
 {¶ 5} At the time of the above sales, appellee was licensed by the Ohio Department of Commerce, Division of Securities, to sell investment products in this state. The Sun Broadcasting note, however, was not registered in Ohio in violation of Ohio securities law.
 {¶ 6} On February 5, 2002, appellants filed a complaint in the Trumbull County Court of Common Pleas alleging negligence and fraud. On October 10, 2002, appellants amended their complaint to include an additional statutory cause of action pursuant to R.C.1707.43, alleging appellee sold or assisted in the sale of an unregistered security. The matter was tried over a three day period during which appellants moved for a directed verdict on their statutory claim. The court denied this motion and submitted the case to the jury. On February 6, 2004, the jury returned a verdict in appellees' favor. Appellant now appeals and raises the following assignments of error:
 {¶ 7} "[1.] The trial court erred by failing to grant a directed verdict for the plaintiff [sic] on their statutory claim pursuant to O.R.C. 1707.43.
 {¶ 8} "[2.] The trial court erred by refusing to admit evidence relevant to appellants' claims to the prejudice of appellants."
 {¶ 9} In their initial assignment of error, appellants contend the trial court erred when it denied their motion for directed verdict on their statutory claim under R.C. 1707.43. Appellants contend they are entitled, as a matter of law, to restitution in the amount of $50,000, i.e., the amount they lost after purchasing the unregistered Sun Broadcasting promissory note from appellee.
 {¶ 10} Pursuant to Civ.R. 50(A)(4), a court should direct a verdict when "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party * * *."[1] Civ.R. 50(A), consequently, requires the lower court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence.[2] If the evidence is such that reasonable minds could arrive at more than one conclusion, the issue must be resolved by the trier of fact.[3]
 {¶ 11} The provisions of R.C. Chapter 1707 are "remedial in nature, and have been drafted broadly to protect the investing public from * * * unscrupulous securities dealers."[4] As indicated above, appellants sought, at trial, a return of their $50,000 investment pursuant to R.C. 1707.43, which provides:
 {¶ 12} "(A) * * * every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision."
 {¶ 13} Accordingly, appellants were charged with establishing a violation of R.C. Chapter 1707 to recover their full purchase price.[5] Appellants alleged that appellee violated R.C.1707.44(C)(1) by selling unregistered securities. In Pencheff v.Adams,[6] the Supreme Court of Ohio determined that any
failure to comply with R.C. 1707.44(C)(1) materially affects the protections contemplated by the violated provision. InPencheff, the court explained that the purpose of these provisions was to:
 {¶ 14} "`* * * prevent those persons willing to market worthless or unnecessarily risky securities from soliciting the purchasing public without first subjecting themselves and their securities to reasonable licensing and registration requirements designed to protect the public from its own stupidity, gullibility and avariciousness.'"[7]
 {¶ 15} In its current form, R.C. 1707.44(C)(1) provides:
 {¶ 16} "(C) No person shall knowingly sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:
 {¶ 17} "(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in section 1707.03, 1707.04, or 1707.34 of the Revised Code, has not been registered by coordination or qualification, and is not the subject matter of a transaction that has been registered by description[.]"
 {¶ 18} The current version of R.C. 1707.44(C)(1) became effective on June 18, 2002, but the sale issued in the matter sub judice occurred in 1998. At that time the statute required proof that the seller or party aiding in the sale in question act both knowingly and intentionally. Thus, the statute in its earlier form prohibited a party from "knowingly and intentionally selling" a non-exempt or unregistered security.
 {¶ 19} That said, the knowledge requirement must be read in conjunction with R.C. 1707.29, which provides that a party is "deemed to have had knowledge of any matter of fact, where in the exercise of reasonable diligence, he should, prior to the alleged commission of the offense in question, have secured such knowledge."[8] Thus, the "knowingly" element imposes a duty of reasonable inquiry on securities salespersons. Id.
 {¶ 20} Accordingly, "a person violates R.C. 1707.44(C)(1) if the person sells unregistered securities which the person knows, or through the exercise of reasonable diligence should know are unregistered."[9]
 {¶ 21} Under the circumstances, the evidence demonstrated that appellee sold an unregistered promissory note to appellants. Pursuant to R.C. 1707.01(B), a promissory note is a security. However, at trial, appellee testified that, when he first began selling promissory notes, he did not know promissory notes were securities; rather, appellee testified he was advised by Tom Ungrady, an Ohio financial advisor who introduced appellee to the sale of promissory notes, Mr. Ungrady's attorney (who remained unnamed), Lloyd Wilson, an investment product wholesaler from California, as well as appellee's broker/dealer, Hackett and Associates, that promissory notes were merely debt obligations and not securities. Throughout his testimony appellee emphasized his reliance upon the information provided by the foregoing individuals/entities regarding the status of the notes as a simple debt rather than a security as defined by statute.
 {¶ 22} After the close of their case, appellants moved for directed verdict on their R.C. 1707.44(C)(1) claim. Appellants argued that the evidence was uncontroverted that appellee sold the notes, the notes were securities, and the notes were unregistered. Moreover, appellants elicited testimony from appellee indicating that, at the time of trial, he was aware that promissory notes were, in fact, securities; however, appellee repeatedly noted that, at the time that he made the sale to appellants, he did not believe the notes to be securities. Specifically, appellee noted:
 {¶ 23} "* * * well, it wasn't a security to begin with. I mean, when we were first approached to sell these things, it was never considered a security. It was just — it was a promissory note. It was not considered as a security product."
 {¶ 24} Ultimately, during an in-chambers hearing, the court denied appellants motion, stating:
 {¶ 25} "* * * the knowingly and intentionally sell [sic] an unregistered security is a question of fact for the jury in this case, even though there has been documentation presented by the Plaintiffs that Sun was put on notice that they were not registered as a security in the State of Ohio, and even though the statutes in Ohio indicate that promissory notes are deemed to be a security in the State of Ohio, the person in this case, the Defendant, had to knowingly and intentionally sell these items and it's the Court's belief that he needs to knowingly or intentionally sell these as unregistered documents, so I think that is a question — I think that is [a] question of fact for the jury to determine, and there is going to be instructions to that effect from that prospective. [sic.]"
 {¶ 26} As indicated supra, the "knowingly" prong of the analysis requires an inquiry into whether appellee exercised reasonable diligence to determine whether the note was a security. Appellee testified that he engaged in some investigation and, as a result, was advised by several financial professionals and one attorney that promissory notes were not securities. While the information appellee allegedly received was inaccurate, the issue of whether appellee was sufficiently diligent was a proper question for the jury to resolve. Furthermore, even had appellee failed to engage in a reasonably diligent investigation, it would be difficult, as a matter of law, to find he intentionally sold unregistered securities as he was under the impression the notes themselves were not securities.
 {¶ 27} Accordingly, we do not think the trial court erred in overruling appellants' motion for directed verdict; the issue of reasonable diligence was a question of fact to which reasonable minds could respond differently given the evidence presented at trial. Appellants' first assignment of error is without merit.
 {¶ 28} In their second assignment of error, appellants argue the trial court abused its discretion when it refused to admit evidence of two cease and desist orders from the Ohio Division of Securities.
 {¶ 29} It is well settled that evidentiary rulings repose in the sound discretion of the trial court.[10] Absent an abuse of discretion, a reviewing court will not interfere with a trial court's decision.[11] An abuse of discretion suggests more than an error of law; rather it implies the court's actions were unreasonable, arbitrary, or unconscionable.[12]
 {¶ 30} The record indicates the cease and desist orders were issued several years after the sale of the Sun Broadcasting note to appellants. Moreover, appellants were not listed as parties in either order. Specifically, the first order was issued on November 20, 2000 against appellee for a sale of a Sun Broadcasting promissory note to one Harold Newmiller. The second cease and desist order was issued on May 29, 2001 against Sun Broadcasting and John Sloan, the company's owner; this order related to the sale of promissory notes to 19 parties in the state of Ohio. The orders specifically state that the notes in question were unregistered securities sold in violation of R.C.1707.44(C)(1). Moreover, while the orders were issued in 2000 and 2001 respectively, they explicitly relate to sales of notes which occurred during the year 1998, the same year appellee sold appellants the Sun Broadcasting note at issue.
 {¶ 31} Even though appellants were not listed in either of the cease and desist orders, they sought to admit the orders to demonstrate that the notes were sold in violation of Ohio law at approximately the same time they were sold the Sun Broadcasting note. In the court's view, the orders were irrelevant to the case at hand as they pertained to the sale of notes to individuals other than appellants. Accordingly, the court did not admit the orders as exhibits; however, the court permitted appellants to utilize the orders to cross-examine appellee for the purpose of demonstrating that the sales of the Sun Broadcasting notes in 1998 were made in violation of R.C. 1707.44(C)(1). The court further permitted appellants to comment upon this testimony in closing argument. In effect, the court allowed appellants to use the substantive conclusions set forth the notes, i.e., that the 1998 sales of the Sun notes violated Ohio law, without allowing the presentation of the extraneous or otherwise collateral information present in the orders.
 {¶ 32} Relevant evidence is that which has "* * * any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[13] Although appellants complain that the court erred by not admitting the orders into evidence, appellants were able to use the relevant information contained in the orders to cross-examine appellee. That is, appellants sought admission of the orders to show that the Sun Broadcasting notes sold in 1998 were unregistered securities and therefore their sale was accomplished in violation of R.C. 1707.44(C)(1). While the court did not admit the orders into evidence (because appellants were not listed in the orders), it allowed appellants to use the orders to show that the Sun Broadcasting notes sold in 1998 were unregistered securities and therefore sold in violation of Ohio law. In doing so, the court shrewdly permitted the relevant evidence internal to the orders to be presented to the jury, while excluding the information in the orders which it deemed irrelevant. The court did not act unreasonable or arbitrarily in doing so.
 {¶ 33} We must note that even had the court excluded all
evidence pertaining to the orders, we would still be slow to interfere with its ruling as the relevant evidence was fundamentally cumulative. Appellee testified that he was aware,at the time of his testimony, that the notes he sold appellants were securities. The upshot of his defense, however, was that he did not know the notes were securities at the time of the sale,
viz., 1998. Hence, the jury was aware that, at some point subsequent to the 1998 sale of the Sun Broadcasting notes, appellee became aware that the notes were securities, that they were unregistered, and therefore were sold in violation of R.C.1707.44(C)(1). This testimony was functionally equivalent to the evidence gleaned from the orders; the relevant evidence in the orders could be reasonably characterized as redundant.
 {¶ 34} However, we believe the court properly handled the evidentiary issues surrounding the cease and desist orders. The court did not abuse its discretion in its management of the evidence as it pertained to these orders. Thus, appellants' second assignment of error is without merit.
 {¶ 35} For the above reasons, appellants' two assignments of error are overruled and the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
O'Neill, J., O'Toole, J., concur.
[1] Id.
[2] Connolly v. Malkamaki, 11th Dist. No. 2001-L-124, 2002-Ohio-6933, at ¶ 15.
[3] DiSilvestro v. Quinn (Dec. 31, 1996), 11th Dist. No. 95-L-061, 1996 Ohio App. LEXIS 5950, at 6.
[4] In re Columbus Skyline Securities, Inc.,74 Ohio St.3d 495, 498, 1996-Ohio-151.
[5] Id.
[6] (1983), 5 Ohio St.3d 153, syllabus.
[7] Id. at 154, quoting Bronaugh v. R. E. Dredging Co.
(1986), 16 Ohio St. 2d 35, 40-41. .
[8] See, Emick v. Hawkins Assoc., 7th Dist. No. 03 MA 175,2004-Ohio-6803, at ¶ 28.
[9] Chiles v. M.C. Capital Corp. (1994), 95 Ohio App.3d 485,497.
[10] Petitto v. Malaney (May 17, 2002), 11th Dist. No. 2001-L-065, 2002 Ohio App. LEXIS 2359, at 3.
[11] Id.
[12] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[13] Evid.R. 401.