ZIGLER et al., Appellants,

v.

AVCO CORPORATION et al., Appellees.

[Cite as *Zigler v. Avco Corp.,* 165 Ohio App.3d 319, 2005-Ohio-6130.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–04–011.

Decided Nov. 18, 2005.

Kevin Boissoneault and Bonnie E. Haims, for appellants.

Matthew P. Moriarty and Kristen L. Mayer, for appellee Avco Corporation.

SINGER, Presiding Judge.

{¶ 1} This is an appeal from a summary judgment issued by the Williams County Court of Common Pleas to a farm-equipment manufacturer in a products liability case. Because we conclude that there is a genuine issue of material fact as to whether the injured assumed the risk and that the trial court failed to consider a separate claim of enhanced damages, we reverse.

{¶ 2} Although appellant Larry Zigler[1] grew up on his father's rural Montpelier, Ohio farm, after he graduated from high school he worked in factories. In the fall of 2001, appellant's father was injured and had to rely on others to harvest the corn in his fields. By January 2002, all but three or four acres had been harvested. It was these fields that appellant volunteered to finish.

{¶ 3} On January 9, 2002, appellant took a vacation day from his factory job. At approximately 9:00 a.m. appellant began to pick corn, using a New Idea Model 300 corn picker manufactured by a subsidiary of appellee Avco Corporation. The

---

1. Larry Zigler's wife, Latrisha, and his two minor children are also appellants by virtue of loss-of-consortium claims. For purposes of this decision, however, we shall refer to Larry Zigler as appellant.

Model 300 is a pull-behind implement, which is attached to a tractor by a hitch and derives its power from the tractor via the tractor's power takeoff ("PTO"). Power is transmitted from the tractor to the corn picker through a rotating PTO shaft. The parts of the Model 300 continue to move unless the tractor's PTO is stopped or the tractor itself is shut off.

{¶ 4} In operation, this corn picker is pulled straddling two corn rows with "gathering shoes." The cornstalks are pulled into the machine by gathering chains that convey the stalk to a snapping roll, which removes the ear of corn from the stalk. The ear is then conveyed to a set of husking rolls, which remove the corn husk. The husked corn is then conveyed by a small elevator to be deposited in a farm wagon drawn behind the picker. The corn picker can sometimes become clogged, in which case operators are instructed to stop the forward motion of the machine. If the clog still does not clear, operators are instructed to stop the PTO and remove debris by hand.

{¶ 5} By noon on January 9, 2002, appellant had picked most of the remaining corn in his father's fields. In the process, he had encountered machine clogs two or three times. On the first clog, appellant stopped the tractor and the PTO and removed the obstruction by hand. In his deposition testimony, appellant said that the process took between ten and 20 minutes. On the second clog, however, appellant left the PTO running, raised the gathering shoes and pulled cornstalks from in front of and below the gathering shoes. When he did this the stalks were pulled in by the gathering chains, clearing the jam.

{¶ 6} At midday, appellant's wife, Latrisha, came to the field to talk to her husband. Latrisha accepted appellant's invitation to ride with him on the tractor while he finished the field. After about 15 minutes, the corn picker again jammed. Appellant again left the PTO running and got off the tractor to clear the clog. Again, appellant raised the gathering shoes and began to pull on a cornstalk. This time, however, the gathering chain took the stalk with such force and speed that appellant's hand was pulled into the machine.

{¶ 7} Appellant yelled to Latrisha for help, but over the noise of the tractor she was unable to tell what he wanted. As she dismounted the tractor to go to him, the gathering chain continued to pull his hand and arm into the machine. At some point, perhaps as much as a minute after the machine seized appellant's arm, his right leg became entangled. He eventually communicated to his wife that she needed to turn off the tractor. Appellant estimated that as much as three minutes passed before she accomplished this. By this time, his arm was wedged into the machine to appellant's armpit; his leg above the knee.

{¶ 8} Rescue workers worked for nearly two and one-half hours to extricate appellant from the corn picker. Although his right arm was saved, appellant lost much of its use. Appellant's right leg was amputated above the knee. Appellant

was hospitalized for 45 days after the injury and spent two years in rehabilitation after his release. He has since undergone multiple surgeries to both his hand and leg.

{¶ 9} On May 2, 2003, appellant sued appellee, alleging that the corn picker that mangled his arm and caused the amputation of his leg was defective in design and manufacture. Appellant alleged that these defects were the proximate cause of his injury. On August 9, 2003, appellant amended his complaint, expressly adding an allegation that appellee's design and manufacture of the corn picker were responsible for enhancing his injuries.

{¶ 10} Appellee denied liability and, following discovery, moved for summary judgment. The trial court granted appellee's motion, finding that appellant "voluntarily encountered a known risk of attempting to unclog the rollers without disengaging the power source and that he appreciated the hazard. Therefore, he assumed a known and open risk which bars his recovery herein." From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:

{¶ 11} "1. The trial court committed reversible error when it failed to address plaintiffs-appellants' claim for enhanced injuries when it granted defendant-appellee AVCO Corporation's motion for summary judgment.

{¶ 12} "2. The trial court committed reversible error when it granted defendant-appellee AVCO's motion for summary judgment holding that plaintiff-appellant Larry Zigler assumed 'a known and open risk.'"

{¶ 13} On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated:

{¶ 14} "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 67, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 15} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere

allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 463 N.E.2d 1246. A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186; *Needham v. Provident Bank* (1996), 110 Ohio App.3d 817, 826, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## I. Assumption of the Risk

{¶ 16} We shall discuss appellant's second assignment of error first.

{¶ 17} The trial court granted summary judgment to appellee because it concluded that appellant had assumed the risk of injury when he attempted to unplug cornstalks jammed into the gathering chains of the corn picker manufactured by appellee. Although there are multiple permutations of assumption of the risk, at its most basic the defense requires that the plaintiff know that a risk is present and understand its nature. Additionally, the plaintiff's decision to incur such a risk must be free and voluntary. Ordinarily, these issues present a question of fact that would preclude summary judgment. Keeton, Prosser & Keeton on the Law of Torts (5 Ed.1984) 486–487. Historically, assumption of the risk served as a complete bar to recovery. See *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 112, 6 OBR 170, 451 N.E.2d 780.

{¶ 18} The phrase "assumption of the risk" encompasses three relatively distinct concepts. Express assumption of the risk involves "an affirmatively demonstrated, and presumably bargained upon, choice by the plaintiff to relieve the defendant of his legal duty toward the plaintiff." Keeton at 496. Primary assumption of the risk involves risks so inherent in an activity that they cannot be eliminated. *Westray v. Imperial Pools* (1999), 133 Ohio App.3d 426, 432, 728 N.E.2d 431. Conceptually, primary assumption of the risk is a conclusion that a defendant owes no duty to a plaintiff. *Anderson,* supra, at 114, 6 OBR 170, 451 N.E.2d 780. Finally, implied assumption of the risk is closely related, if not interwoven, with the concept of contributory negligence. Acceptance of a known risk is implied by the conduct of a plaintiff under the circumstances. The distinction between implied assumption of the risk and contributory negligence, Professor Keeton notes, "has baffled a great many law students, some judges, and unhappily a few very learned legal writers." Keeton at 485.

{¶ 19} In negligence cases, although express and primary assumption of the risk remain viable defenses, implied assumption of the risk is merged with contributory negligence. *Anderson,* 6 Ohio St.3d at 113, 6 OBR 170, 451 N.E.2d 780 (premised on former R.C. 2315.19, the comparative negligence statute);

*Gallagher v. Cleveland Browns* (1996), 74 Ohio St.3d 427, 430–431, 659 N.E.2d 1232. Comparative negligence, however, is inapplicable in a products-liability case. *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 31 OBR 559, 511 N.E.2d 373, at paragraph one of the syllabus. This conclusion was codified by the Ohio Legislature in 1987 Am.Sub.H.B. No. 1, which created former R.C. 2315.20 (repealed by 2002 Am.Sub.S.B. No. 120, eff. 4–9–03). When the present claim arose, former R.C. 2315.20 provided:

{¶ 20} "(A) * * * Express or implied assumption of the risk may be asserted as an affirmative defense to a product liability claim * * *.

{¶ 21} "(2) [I]f express or implied assumption of the risk is asserted as an affirmative defense to a product liability * * * and if it is determined that the claimant expressly or impliedly assumed a risk and that such express or implied assumption of the risk was a direct and proximate cause of harm for which the claimant seeks to recover damages, the express or implied assumption of the risk is a complete bar to the recovery of those damages."

{¶ 22} While any of the varieties of assumption of the risk might be applicable in this matter, it is not clear from the trial court's judgment entry or appellant's motion for summary judgment which type was applied. Appellee's summary-judgment motion refers to both express and implied assumption of the risk. The judgment and decision state only that appellant assumed the risk when he voluntarily "and with full knowledge of the open hazard" tried to unclog the corn picker without shutting down its power source.

{¶ 23} Clearly, there was evidence that appellant expressly assumed the risk of operation of this machine: no affirmative demonstration of a bargained-for understanding. Consequently, express assumption of the risk is inapplicable. Neither is there evidence of record by which it could be argued that an efficient corn picker cannot be manufactured that eliminates the danger of a pull-in type event such as that encountered by appellant. Indeed, even if such evidence had been proffered, the thrust of appellant's expert witness testimony would contradict that assertion, setting up a material question of fact. Consequently, there is no evidence by which the trial court could have concluded that there was primary assumption of the risk by appellant or, at least, there is a question of fact that would preclude summary judgment. See *Parks v. Allis–Chalmers Corp.* (Minn. 1980), 289 N.W.2d 456, 460 (whether plaintiff who lost arm unclogging corn stalks deliberately encountered a known obvious risk was a question of fact).

{¶ 24} Remaining is implied assumption of the risk, the gist of which is that the defense arises when there is a consent to or acquiescence in an appreciated or known risk. *Wever v. Hicks* (1967), 11 Ohio St.2d 230, 234, 40 O.O.2d 203, 228 N.E.2d 315. " '[T]he traditional basis [for] assumption of risk is a

matter of knowledge of the danger and [of] intelligent acquiescence in it * * *." Id., quoting Prosser, Law of Torts (3d Ed.1964) 452. A plaintiff must both know and appreciate the risk to which he or she is exposed. "Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he has no knowledge. Moreover, he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts." Keeton, supra, at 487.

{¶ 25} In its memorandum in support of summary judgment before the trial court and in its brief here, appellee relies on a Pennsylvania case that contains facts nearly identical to those in the present matter. In *Hadar v. Avco Corp.* (Nov. 5, 2003), Westmoreland C.P. No. 6131 of 2001, plaintiff Charles Hadar's hand was mangled when he attempted to use a corn stalk to dislodge a jam in the husking rollers of a New Idea Model 300 corn picker. Like appellant, Hadar had limited experience with the corn picker and, like appellant, Hadar did not disengage the PTO before approaching the machine. Also like appellant, Hadar's hand was pulled into the machine when the clog broke and the corn stalk he was holding was sucked in with unexpected force and speed. In Pennsylvania, the trial court, like the trial court here, applied the doctrine of implied assumption of the risk and granted summary judgment to appellee.

{¶ 26} Subsequent to oral argument, however, a Pennsylvania Court of Appeals reversed the *Hadar* trial court,[2] concluding that a material issue of fact remained as to whether Hadar fully appreciated the risk involved in operating the corn picker. *Hadar v. Avco Corp.*, 886 A.2d 225, 2005 PA Super 326, at ¶ 1.

{¶ 27} Pennsylvania, like Ohio, requires that a party have full knowledge and appreciation of a risk before such risk may be assumed in a legal sense. *Hadar* at ¶ 8 (it must be shown that the party " 'consciously appreciated the risk that attended a certain endeavor [and was injured by] the same risk of injury that was appreciated and assumed,' " quoting *Bullman v. Giuntoli* (Pa.Super.2000), 761 A.2d 566, 573); *Briere v. Lathrop Corp.* (1970), 22 Ohio St.2d 166, 174–175, 51 O.O.2d 232, 258 N.E.2d 597 ("one must have full knowledge of a condition; such condition must be patently dangerous to him; and he must voluntarily expose himself to the hazard created"). In Pennsylvania, as in Ohio, assumption of the risk is ordinarily a question of fact. *Lonon v. Pep Boys, Manny, Moe & Jack* (1988), 371 Pa.Super. 291, 538 A.2d 22, 25; *Goodin v. Corry* (1982), 5 Ohio App.3d 178, 179, 5 OBR 362, 450 N.E.2d 727.

{¶ 28} Appellee is correct. There are substantial similarities between the facts in *Hadar* and the present matter. In both cases there is a substantial dispute

---

**2.** On appellant's motion to supplement the record and appellee's motion in opposition, the motion is found well taken and, hereby, granted.

about the familiarity of the plaintiff with farm machinery in general and corn pickers in particular. Here, appellee characterizes appellant as having grown up on the farm. Appellant's deposition testimony, however, was that he had been away from the farm and doing factory work for his entire adult life. Appellant's expertise with a corn picker is, therefore, at issue. This is material because it goes to appellant's ability to appreciate the danger of the machine to him.

{¶ 29} Additionally, both Hadar and appellant were injured not while touching the corn picker, but while holding a corn stalk. Both professed surprise at the speed and force of the corn picker's disposition of these corn stalks. Whether such surprise was reasonable is a question of fact and again is material to appellant's appreciation of the danger present. Moreover, there is substantial evidence that other farmers underappreciated this risk. Appellant's father testified in his deposition that he regularly cleaned jams with the PTO on. Hadar, like appellant, claimed that clearing jams required substantial time with the PTO off. The claim also occurs in *Parks v. Allis–Chalmers, Corp.*, 289 N.W.2d 456. All these issues are questions of fact that are material because they go to appellant's knowledge of the danger represented by appellee's corn picker. Questions of material fact preclude summary judgment. Consequently, the trial court erred in awarding summary judgment in this matter. Accordingly, appellant's second assignment of error is well taken.

## II. Enhanced Damages

{¶ 30} In his first assignment of error, appellant maintains that the trial court erred in failing to address his claim for "enhanced injuries" as the result of a design defect in the New Idea Model 300 corn picker.

{¶ 31} Sometimes called the "second collision" doctrine, the enhanced injury doctrine holds that a manufacturer is liable for design defects that do not cause an accident, but cause injuries suffered in an accident to be greater than might otherwise have been sustained. *Turcotte v. Ford Motor Co.* (C.A.1, 1974), 494 F.2d 173, 180. The doctrine was recognized in Ohio in *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 21 O.O.3d 285, 424 N.E.2d 568, in which occupants of a Jeep who were injured in an off-road rollover accident sued the vehicle's manufacturer. The plaintiffs complained that their injuries were exacerbated when an allegedly defectively designed roll bar on the Jeep collapsed. A trial court jury found for the plaintiffs on their claim and the appeals court affirmed. On further appeal, the Supreme Court of Ohio affirmed, holding:

{¶ 32} "1. A cause of action for damages for injuries caused or enhanced by a product design defect will lie in strict liability in tort. (*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317[, 4 O.O.3d 466], 364 N.E.2d 267, approved and followed.)

328

{¶ 33} "2. A product is in a defective condition unreasonably dangerous to the user or consumer if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Id. at paragraphs one and two of the syllabus.

{¶ 34} The "enhanced injury" cause of action is applicable to any product that is "more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner * * *." *Knitz v. Minster Machining Co.* (1982), 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814, syllabus (stamping press); *Goodson v. McDonough Power Equip. Inc.* (Aug. 18, 1981), 2d Dist. No. 80–CA–34, 1981 WL 2886 (riding lawnmower). Enhanced injury is a separate cause of action to be distinguished from a defect that causes the accident itself. *Gable v. Gates Mills,* 103 Ohio St.3d 449, 454, 2004-Ohio-5719, 816 N.E.2d 1049, at ¶ 24.

{¶ 35} In the present matter, appellant presented testimony from an expert witness that corn-picker accidents are common and frequently involve operators being pulled into the machine. The expert also testified that a pull-in type injury could have been minimized if the manufacturer had included an emergency stop mechanism, reachable from the nip points of the machine. Moreover, the expert testified, such a mechanism could have been included at the time the New Idea Model 300 was manufactured at a cost of substantially less than $50 per unit. Such a device, according to the expert, could have stopped the machine in a matter of seconds, avoiding injury to appellant's upper arm and the loss of his leg.

{¶ 36} A cause of action premised on enhanced injury is separate and distinct from primary causation. Based on the evidence submitted on the summary-judgment motion, a question of fact exists as to whether the claim could be sustained, irrespective of the court's resolution of primary causation. Consequently, the trial court erred in granting summary judgment on this claim. Accordingly, appellant's first assignment of error is well taken.

{¶ 37} On consideration whereof, the judgment of the Williams County Court of Common Pleas is reversed. This matter is remanded to that court for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

Skow, J., concurs.

Parish, J., dissents.

PARISH, Judge, dissenting.

{¶ 38} I respectfully dissent.

{¶ 39} The majority writes that there are questions of fact as to whether appellant had any knowledge and appreciation of the danger represented by the corn picker. I disagree. When the machine clogged for the second or third time that morning, appellant made a calculated decision not to turn off the power and grabbed the stalks of corn in an attempt to dislodge them. To suggest that appellant did not appreciate the risk inherent in working on such a powerful machine without turning it off is unrealistic. As to his knowledge of the risk, appellant demonstrated in his deposition testimony a familiarity with the workings of the corn picker. Appellant had used the machine before and had seen his father use it. In the words of the majority, if a clog does not clear by stopping the forward motion of the machine, *the operator is instructed to stop the PTO* and remove debris by hand.

{¶ 40} The majority opinion fails to acknowledge established Ohio case law regarding assumption of risk. Assumption of risk arises when a plaintiff has full knowledge of a condition, the condition is patently dangerous, and the plaintiff voluntarily exposes himself to the hazard created. *Briere v. Lathrop Co.* (1970), 22 Ohio St.2d 166, 174–175, 51 O.O.2d 232, 258 N.E.2d 597, citing *Masters v. New York Cent. RR. Co.* (1947), 147 Ohio St. 293, 34 O.O. 223, 70 N.E.2d 898. Underlying the doctrine of assumption of risk, and directly applicable to the case before this court, is the notion that "some known risks are so inherent in certain activities or situations that they cannot be eliminated." *Brewster v. Fowler* (Oct. 13, 2000), Trumbull App. No. 99–T–0091, 2000 WL 1566528, citing *Ferguson v. Cincinnati Gas & Elec. Co.* (1990), 68 Ohio App.3d 460, 462, 590 N.E.2d 1332. In primary assumption of risk situations, "the risk is not created by the defendant's negligence, but by the nature of the activity * * *." *Ferguson*, supra. Appellant's expert witness, a professional engineer, testified at deposition that the corn picker "is inherently dangerous by function." Corn-picking machines by definition will always be dangerous, and operators will always be warned to turn off the power source before attempting to remove a clog. Appellant demonstrated an understanding of the danger involved in working on the machine when he stated in his deposition that when he had attempted to unclog the corn picker previously he turned off the power first. When it became clogged again, appellant either ignored or accepted the risk involved in tampering with the machine while the power was still on. I would find that appellant knew of the dangerous condition presented by the corn picker, that the machine is inherently dangerous, and that appellant voluntarily exposed himself to an obvious and known danger when he attempted to unclog the machine without turning off the power source. Appellee herein was entitled to judgment as a matter of law.

{¶ 41} The majority further concludes that regardless of the trial court's determination as to primary causation of the injuries, a question of fact exists as to whether an enhanced-injuries claim could be sustained. This conclusion fails to acknowledge relevant Ohio case law. In *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 21 O.O.3d 285, 424 N.E.2d 568, the Ohio Supreme Court held that an enhancement-by-design-defect claim lies in strict liability in tort. Further, the court has held that voluntary and unreasonable assumption of a known risk posed by a product constitutes an absolute bar to recovery in a products-liability action based upon strict liability in tort. *Kitchens v. McKay* (1987), 38 Ohio App.3d 165, 169, 528 N.E.2d 603, citing *Leichtamer,* supra. Based on the foregoing, any argument that appellant's pull-in type injury might have been minimized if the manufacturer had installed an emergency stop mechanism is irrelevant. Having found that appellant assumed the risk of his injuries, there was no reason for the trial court to consider the enhanced-injuries claim, since recovery based on such a theory would be barred.

{¶ 42} Accordingly, I would deny both assignments of error and would affirm the judgment of the trial court.