DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a summary judgment issued by the Lucas County Court of Common Pleas in favor of a city, defending a lawsuit alleging that it negligently or recklessly razed a private structure. Because we conclude that there was a material question of fact precluding summary judgment concerning the adequacy of the notice preceding demolition, we reverse.
 {¶ 2} In 1998, appellant, Dean Holtz, purchased a residential property at 1225 Peck Street, Toledo. The city of Toledo is appellee.
 {¶ 3} Shortly after appellant's purchase of the Peck Street property, he received two notices from appellee advising him that his property had been determined to be a public nuisance by the "Commissioner of Department of Neighborhoods, Demolition Division."
 {¶ 4} One of these communications stated:
 {¶ 5} "YOU ARE HEREBY ORDERED TO: Remove all junk, debris and litter from entire property and maintain property in a clean nuisance free condition at all times. T.M.C. 1726.01(a)(4)
 {¶ 6} "Unless you cause the abatement of this public nuisance within seventy-two (72) hours after service of this notice, the public nuisance may be abated by the City of Toledo at your expense."
 {¶ 7} The other advised:
 {¶ 8} "YOU ARE HEREBY ORDERED TO: Repair/replace chimneys, doors, repair rear stairs, repair gutters and spouts, scrape paint off windows, or demolish. T.M.C. 1726.01(a)(4)
 {¶ 9} "Unless you cause the abatement of this public nuisance within thirty (30) days after service of this notice, the public nuisance may be abated by the City of Toledo at your expense."
 {¶ 10} On receipt of these notices, appellant contacted appellee's inspector, requesting more time to complete the cleaning and repairs. It is not clear whether appellant received a response to this request.
 {¶ 11} It appears that the next communication between the parties was on November 3, 2000, when the city again sent appellant notices of determination of public nuisance. Again, one of these referred to debris on the property:
 {¶ 12} "YOU ARE HEREBY ORDERED TO: Board and secure property, cut grass and weeds, KEEP CUT, cut down a scrub tree, remove all junk, debris and litter from entire property, including pieces of roofing in rear on sidewalk, clutter from front porch, wood, miscellaneous items, etc. Maintain property in a nuisance free condition at all times. T.M.C. 1726.01(a)(4)
 {¶ 13} "Unless you cause the abatement of this public nuisance within seventy-two (72) hours after service of this notice, the public nuisance may be abated by the City of Toledo at your expense."
 {¶ 14} Again the second notice referred to structural repairs:
 {¶ 15} "YOU ARE HEREBY ORDERED TO: Repair chimneys, doors, repair/replace missing/damaged windows, add railing rear steps, add steps in front, add/repair/replace missing gutters and spouts, repair/replace/scrape/paint wood preservation (including around windows) or demolish. T.M.C. 1726.01(a)(4)
 {¶ 16} "Unless you cause the abatement of this public nuisance within thirty (30) days after service of this notice, the public nuisance may be abated by the City of Toledo at your expense."
 {¶ 17} According to appellant, after this notice he heard nothing from the city. During this time, however, appellant averred that he made numerous improvements to the property, including repair of the chimney and installation of windows and flooring.
 {¶ 18} On September 11, 2003, appellee demolished appellant's building.
 {¶ 19} On April 6, 2004, appellant sued appellee, alleging that appellee had "wrongfully demolished" his property. In his complaint, appellant alleged that appellee had a duty to notify him of its intent to demolish the structure and that it breached that duty to his prejudice. Appellee answered, denying liability and raising a counterclaim for the cost of demolition.
 {¶ 20} Appellee moved for summary judgment, alleging that it was immune from suit. Appellant then amended his complaint, adding an allegation of a violation of due process and intentional reckless and wanton conduct.
 {¶ 21} The trial court awarded appellee summary judgment, concluding that with respect to appellant's negligence, intentional and reckless conduct claims, the city was entitled to immunity from suit. Concerning the due process question, the trial court concluded that this required no more than notice and an opportunity to be heard. The court found that the determination of nuisance from the city constituted sufficient notice of the anticipated demolition and that appellant waived his opportunity to be heard by failing to avail himself of procedures for appeal set out in the notice.
 {¶ 22} From this judgment, appellant now brings this appeal, setting forth the following single assignment of error:
 {¶ 23} "The lower court erred in granting summary judgment in favor of the city of Toledo."
 {¶ 24} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 25} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 26} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery
(1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
 I. Tort Immunity {¶ 27} When the Supreme Court of Ohio abrogated the common law doctrine of sovereign immunity for municipalities, seeHaverlack v. Portage Homes, Inc. (1982), 2 Ohio St.3d 26, at paragraph two of the syllabus, the General Assembly responded by enacting the Political Subdivision Tort Liability Act, 1985 Am.Sub.H.B. 176, codified as R.C. Chapter 2744.
 {¶ 28} R.C. Chapter 2744 classifies the functions of political subdivisions as either "governmental" or "proprietary." R.C. 2744.02(A)(1). Governmental functions are those involving public health and safety and "* * * not customarily engaged in by nongovernmental persons." R.C. 2744.01(C)(1)(c). Proprietary functions are those, "* * * activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1)(b). R.C. 2744.01 provides a nonexclusive list of each function.
 {¶ 29} Subject to certain statutorily defined exceptions, "* * * a political subdivision is not liable in damages in a civil action for * * * loss to person or property allegedly caused by an act or omission of the political subdivision or an employee * * * in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). Excepted from this blanket immunity are torts by political subdivision employees operating motor vehicles, R.C. 2744.02(B)(1)(a)-(c), and negligence by employees performing proprietary functions.
 {¶ 30} Condemnation of buildings and subsequent demolition is a governmental function. Brewer v. Butler Cty. Bldg. Zoning
(2001), 142 Ohio App.3d 567, 579; Monesky v. City of Wadsworth
(Apr. 3, 1996), 9th Dist. No. 2478-M. We find nothing in the statutes which would exempt this circumstance from the blanket immunity afforded political subdivisions for governmental functions. Consequently, the trial court properly granted appellee summary judgment on appellant's tort claim.
 II. Due Process {¶ 31} R.C. 2744.09 provides a specific exception from political subdivision immunity for civil claims based upon alleged violations of the constitution or statutes of the United States. In his amended complaint, appellant alleges that the demolition of his building deprived him of his property without due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 32} Claims implicating property interests alone are not substantive but procedural in nature. Cooperman v. Univ.Surgical Assoc. (1987), 32 Ohio St.3d 191, 198. Procedural due process demands at a minimum that one who is to be deprived of property by the state be given notice of the action and an opportunity to be heard. Both the notice and the opportunity to be heard, "* * * must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe on a protected liberty or property interest." State v. Hochhauser
(1996), 76 Ohio St.3d 445, 459. The notice must be, "* * * reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Samson Sales, Inc.v. Honeywell, Inc. (1981), 66 Ohio St.2d 290, 293, quotingMullane v. Central Hanover Bank Trust Co. (1950),339 U.S. 306, 314.
 {¶ 33} Appellant insists that the notice provided to him was both untimely and insufficient.
 {¶ 34} Considering the timeliness of the notices appellant received, we note that on their face these documents provide appellant with a time certain to either perform the act demanded or appeal. The alternative to these options was that the city would itself take action, with the costs to be charged to the property owner.
 {¶ 35} Appellant is in the curious position of arguing that the city gave him too much time before it executed its threatened action. Appellant suggests that it "defies logic and reason" for notices given in 2000 to be sufficient for a demolition in 2003. It is difficult to share appellant's incredulity. The notice would have been untimely had the city moved before the amount of time it stated in the notice. As it happened, we cannot see how appellant was prejudiced by additional time.
 {¶ 36} More interesting is the question of the content of the notice. Notice questions tend to go more toward a sufficiency of service than anything else: whether the proper party was served; whether the notice was sent to the right address. See, e.g.,Cincinnati v. York Rite Bldg. Assn., 164 Ohio App.3d 591, 594,2005-Ohio-6771, at ¶ 10; In re Foreclosure of Liens forDelinquent Taxes (1980), 62 Ohio St.2d 333, 337-338. There can be little doubt, though, that for a notice to be meaningful in time and meaningful in manner, it must apprise the recipient by a method reasonably designed to convey a cognizable message.
 {¶ 37} How clear and carefully crafted the message must be depends on the interest affected, the risk of erroneous deprivation of that interest and the burden alternative procedures would impose on the state. Matthews v. Eldridge
(1976), 424 U.S. 319, 335. The greater the interest, the greater the responsibility to communicate the risk.
 {¶ 38} It would seem that there is a quantifiable difference in the interest involved if the message is "if you don't fix your chimney, we'll fix it for you and send a bill" than "if you don't fix your chimney, we're going to tear down your house." This is the issue appellant raised in the trial court and he raises here.
 {¶ 39} Appellant insists that the form notices he received did not give him an adequate warning that if he did not make the ordered repairs that his structure would be demolished. Indeed, appellant avers, in an affidavit accompanying his memorandum in opposition to summary judgment, he would not have expended nearly $9,000 in material to do repairs on the structure had he known that the city intended to raze it.
 {¶ 40} The trial court rejected appellant's position. Without additional argument, the court focused on the word "abate" as used in the notice. Applying the type of analysis ordinarily employed for contracts or statutes, the trial court looked for the common meaning of the word "abate" and found in Black's Law Dictionary (5 Ed. 1979) 4, a secondary meaning of the word as "[t]o bring down entirely or demolish * * *." The trial court also found "demolish" as one of the definitions of "abate" in Webster's Third New International Dictionary (1961) 2. On these findings, the trial court concluded that appellant had been properly notified of the potential consequences of inaction and had failed to seek an opportunity to be heard. The trial court, therefore, found appellant's constitutional claim unavailing.
 {¶ 41} In our view, the trial court missed the point. The issue is whether the notice provided by the city would have reasonably informed appellant that if he did not make the ordered repairs his building would be demolished. Because the property interest at issue is essentially total, the city has a high burden to make its intentions clear.
 {¶ 42} There are no doubt many circumstances in which the sufficiency of a notice is a matter of law. When we attempt to discern whether something is "reasonable," however, we ordinarily view this as a question of fact. See Zigler v. Avco Corp.,165 Ohio App.3d 319, 327, 2005-Ohio-6130, at ¶ 29 (reasonable surprise); Williams v. Guarnieri, 11th Dist. No. 2004-T-0033,2005-Ohio-4044, at ¶ 29 (reasonable diligence); Yates v.Allstate, 5th Dist. No. 04-CA-39, 2005-Ohio-1479, at ¶ 18 (whether notice is given in reasonable time).
 {¶ 43} In this matter, it appears that the city may have stumbled over its own boilerplate. Demolition and destruction are not synonyms that immediately leap to mind when the term "abate" is used. Thus, while it is true that the notices at issue are from the city's "Demolition Division" and the body of the notice says "repair/replace, * * * or demolish," we believe that viewing the notice as a whole there is an issue of material fact as to whether the notice reasonably conveyed the city's intent to demolish appellant's structure. Such a question of fact precludes summary judgment.
 {¶ 44} Accordingly, appellant's sole assignment of error is found well-taken in part.
 {¶ 45} The judgment of the Lucas County Court of Common Pleas is vacated. This matter is remanded to said court for further proceedings in conformity with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT VACATED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J. Skow, J. concur.
Handwork, J., Dissents.