WEISER, RECEIVER, v. JULIAN ET AL.

*Corporations—Trust not created, when—Advancement of money
—Agreement to assume obligation to transfer stock—Foreign corporations—Charter forfeited in foreign state—Rights
of stockholders and creditors—Ohio laws inapplicable, when
—Settlement of dissolved domestic corporations—Sections
8742, 11968 and 11969, General Code.*

1. An agreement, whereby, in consideration of the advancement by A of certain sums of money to the R Co., the S Co. is to transfer to A a specific number of shares of corporate stock of the R Co., with the understanding that A is to assume the obligation of the S Co. to the M Co. to deliver to the M Co. 1,500 shares of capital stock of the R Co., as per the terms of a contract between the S Co. and the M Co., does not create a trust.

2. After a foreign corporation has lost its corporate existence under the laws of the state creating it and has no power to sue or be sued, the stockholders and creditors of such defunct foreign corporation have no rights under Sections 8742, 11968 and 11969, General Code, providing for the settlement of affairs of dissolved domestic corporations.

(Decided March 7, 1921.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Robert M. Morgan* and *Mr. Charles B. Bayly,*
for plaintiff in error.

*Mr. Frank F. Dinsmore* and *Mr. John C. Hermann,* for defendants in error.

CUSHING, J. The defendants in error, who were defendants below, recovered a judgment in the superior court of Cincinnati, and this proceeding is prosecuted to reverse that judgment.

Prior to 1902, E. R. Edson invented and patented processes for the reduction of garbage, etc. He,

with others, in 1902, organized The Edson Reduction Machinery Company under the laws of Maine. That company acquired the Edson patents and processes. In 1906 the corporation decided not to further engage in active business. The individuals interested in the Machinery Company incorporated The Edson Sanitary Company, under the laws of Ohio, for the purpose of promoting corporations in various cities to use the Edson patents and processes.

The Sanitary Company, through A. I. McLeod and others, promoted the Chicago Reduction Company. It was incorporated under the laws of Illinois, August, 1906. The capital stock was $1,500,000. The Sanitary Company had entered into a contract with the city of Chicago for the reduction of garbage, etc., by the use of the Edson patents and processes. This contract was assigned to and assumed by the Chicago Reduction Company.

Owing to financial difficulties and for the purpose of raising money for the Chicago Company, the Sanitary Company, August 17, 1906, entered into a contract with W. A. Julian and J. R. Thomas, whereby they agreed to advance certain sums of money to that company and to acquire the stock of the Chicago Reduction Company. The contract in question provided that Julian and Thomas were to assume the obligation of the Sanitary Company to the Machinery Company, that is, to deliver to the Machinery Company 10% of the capital stock of the Chicago Reduction Company, 1,500 shares, par value $150,000.

The Edson patents and processes then in use in Cleveland, Detroit and other cities proved unsuccessful. This became known to Julian and Thomas

in December, 1906, or early in January, 1907. It was then certain that the Chicago Reduction Company could not use these patents and processes and be a commercial success. That company was under a heavy bond to the city of Chicago to carry out the contract it had assumed. It was without funds, a plant, or process. Early in 1907, Julian and Thomas secured a new contract with the City of Chicago by which the Chicago Company was relieved from using the Edson patents and processes. A new plant was equipped, and a different process was installed and operated. From 1907 until sometime in 1911 the plant was operated without profit.

In 1909 the stockholders and directors of the Machinery Company by failing to pay the corporation tax permitted the state of Maine to forfeit its charter. In July, 1913, the Chicago Reduction Company was sold to the City of Chicago.

September 25, 1917, H. F. Lyman et al. sued Julian and Thomas in the superior court.

March 13, 1919, Wm. Greif et al. brought an action in the court of common pleas of Cuyahoga county against Lyman and Walton for the appointment of a receiver to hold and collect the unliquidated assets of the Edson Machinery Company. J. F. Weiser was appointed receiver the same day. April 16, 1919, by leave of court, over the objection of Julian and Thomas, said receiver filed an answer and cross-petition to the second amended petition in this case. Julian and Thomas answered the receiver's cross-petition, and, among other defenses, pleaded the law of the State of Maine, as follows:

Section 81, Chapter 51:

"Corporations, whose charters expire or are otherwise terminated, have a corporate existence for

three years thereafter; to prosecute and defend suits; to settle and close up their concerns; to dispose of their property; and to divide their capitals.''

Section 82 provides for the appointment of a receiver when the charter of a corporation has been forfeited.

Section 90, Chapter 51, provides:

''Such court has jurisdiction in said cause to appoint receivers, issue injunctions, and pass interlocutory decrees and orders according to the usual course of proceedings in equity; and shall, moreover, upon dissolving said corporation, or upon terminating its charter, appoint one or more trustees, who shall have all the powers conferred upon similar trustees by sections eighty-one, eighty-eight and ninety-eight, or by any other law of the state, with such special powers as may be given them by said court. But, notwithstanding the appointment of such trustees, said court may superintend the collection and distribution of the assets of said corporation, and may retain said bill for that purpose.''

The provisions of the contract in question for consideration here are:

''Of the common stock, which stands in the name of Arthur Jones, as trustee, and which is the property of this company, this company will dispose of as follows: This company will reserve and cause to be transferred to itself $250,000 par value of said common stock, and will cause to be issued $50,000 in discharge of its Chicago commitments above referred to. The balance it will cause to be transferred to you, or to such persons as you shall hereinafter direct, to Mr. Jones, in writing, but with the understanding that you are to assume the obligations to the Edson Reduction Machinery Company which

amount to $150,000 of said common stock under the. terms of the contract between The Edson Sanitary Company and The Edson Reduction Machinery Company, with which you are familiar."

It was claimed, and testimony was offered in support of it, that Mr. Edson as president of the Edson Reduction Machinery Company entered into a verbal contract with Julian and Thomas whereby they agreed to hold 1,500 shares of the stock in the Chicago Reduction Company, mentioned in the contract above quoted, until the Chicago Reduction Company was put on a paying basis and Julian and Thomas were repaid the advances made by them, when said stock was to be delivered to the Machinery Company. This claim will not be considered other than to say that the trial court found from a consideration of the evidence and the weight to be given it, that said claim was not established by the receiver. We are of opinion that the finding of the trial court on that issue was not manifestly against the weight of the evidence.

Considering the evidence, arguments of counsel and their briefs, it is clear that the right of this case is on the side of the defendants in error. Whether that conclusion can be reached, considering the situation in which the parties place themselves, can be determined only from a consideration of the questions of law involved.

The only assets owned by the Machinery Company were the patents and processes. The consideration moving from that company to the Sanitary Company was the patents and processes. The contract with the City of Chicago was based on and provided for the use of these patents and processes. It was the use of said patents and processes that gave the Ma-

chinery Company the right to get 10% of the stock of any corporation promoted by the Sanitary Company. When Julian and Thomas by contract assumed the obligations of the Sanitary Company to the Machinery Company, the consideration moving to them was the use of the same patents and processes. The said patents and processes within three months after the contract in question was made proved to be worthless. It is not disputed that all Julian and Thomas got from the Sanitary Company as the situation developed was the stock of the Chicago Company, a liability on a bond to perform an impossible contract, and an obligation to pay notes endorsed by them in the sum of $40,000.

In argument counsel for the receiver practically ignores this situation and says that Julian and Thomas were trustees, and held the 1,500 shares of stock in trust for the use and benefit of the Machinery Company, and so far as that company is concerned it is of no consequence that a new contract was entered into with the city of Chicago, a new plant built, and a different process developed, that through it all the Machinery Company owned the stock, and Julian and Thomas must account for it, or the amount it represented in the corporation.

There is no ambiguity in the contract. In our view of the case it will not be necessary to discuss the failure of consideration, if such there be. I go direct to the question: Did the contract create the relation of trustee? We are asked to infer from a construction of the contract that it was the intention of the parties to create an express trust. The case of *Carlisle et al., Exrs., v. Foster, Exr.*, 10 Ohio St., 198, is cited as authority for this contention. The facts in that case were that Sontag owned property

that was mortgaged. He transferred it, choses in action and assets, to one Loring "for the uses and purposes and upon the conditions following * * *." No such language creating a trust is found in this contract. The principles in that case are not applicable here. In *Mannix, Assignee,* v. *Purcell,* 46 Ohio St., 102, unlike this case, the property was delivered, to be specifically held, used and disposed of for the benefit of organizations therein named. The contract in this case was for the purchase of stock, the purchasers to assume an obligation to a third person.

The better rule is stated in *Kershaw* v. *Snowden,* 36 Ohio St., 181, that an express trust is not created by the receipt of money that was mingled with his own, and not paid over during the life of the deceased, but the relation of debtor and creditor was created. In *Douglas* v. *Corry, Exrx.,* 46 Ohio St., 349, the confidential relation of an attorney who collected and retained money without the use of fraud or falsehood in its receipt did not create the relation of trustee.

In *Nebraska City Nat. Bank* v. *Nebraska City Hydraulic Gas-Light & Coke Co.,* 14 Fed. Rep., 763, it was held that where the vendee of property assumes the payment of an indebtedness due from the vendor to a stranger, he does not thereby become a trustee for such vendor for the amount of such indebtedness.

Other cases might be cited to the same effect, but sufficient has been said to show that this case differs from one where property was delivered to a person who had no interest in it, or right to it, except to hold it for the use and benefit of another.

The defendants were purchasers of stock. It was transferred to them and became their property. They assumed an obligation to the Machinery Company that was in contract. It was breached by defendants. The date of the breach is in controversy. From the evidence, considering its weight, and the conduct of the parties, it seems reasonably certain that the breach occurred about January, 1907, when Edson, president of both corporations, was notified, as defendants claim, that they would not perform the contract. It is not necessary to rest this branch of the case on a finding from the evidence. Defendants in error by contract were obligated to deliver to the Machinery Company 1,500 shares of stock of the Chicago Reduction Company. No time was specified in the contract for that delivery. It should, therefore, have been delivered within a reasonable time. Where the promise to perform is clear, but no time for performance is definitely stated in the contract, the stipulation is to be performed within a reasonable time, and a failure to so perform will be a breach of the contract. (*Rock* v. *Monarch Bldg. Co.*, 87 Ohio St., 244.) It has been held in cases where brokers failed to deliver stock that thirty days was a reasonable time within which to make delivery. The trial court found that the stock should have been transferred (delivered) at the close of the year 1906, or in the first quarter of 1907. We cannot say that this finding was erroneous.

If, as counsel for receiver intimates, this is an action for a breach of a contract in writing, the statute of limitations would be fifteen years from January, 1907, and would not run until January, 1922. The suit as originally brought does not purport to be based on a breach of contract. It is urged by counsel for defendants in error that plaintiff in er-

ror should not be permitted now to change the ground and ask for relief as if on an action at law. However, viewed from this aspect, the judgment rendered below does no injustice to the plaintiff. Considering this as an action for a breach of contract, at what time should the value of the stock be determined?

The Ohio rule in such cases is the market value of the stock at the time the cause of action accrued, and, if the stock was then worthless, only nominal damages can be recovered. (*Fosdick* v. *Greene*, 27 Ohio St., 484.)

The record shows that at the time of the alleged breach of the contract the stock which the plaintiff claims was practically worthless. It was only after the expenditure of large sums of money and years of work that it was made valuable.

The rule in New York and some other states in case of purchase of stock on the market, and a failure of the broker to deliver it, is the market value of the stock during a reasonable time after the cause of action accrued. *Baker* v. *Drake*, 53 N. Y., 211; *Galigher* v. *Jones*, 129 U. S., 193; and *White* v. *United States*, 202 Fed. Rep., 501.

Neither on principle nor authority has any good reason been shown for adopting other than the Ohio rule.

Moreover, there is a further reason why the lapse of time prevents granting relief to plaintiff in error. The Edson Reduction Machinery Company was a corporation under the laws of the state of Maine. Its charter was forfeited in 1909. Under the laws of its creator, the rights held by the corporation perish if they are not exercised within three years.

In *Maine Shore Line Rd. Co.* v. *Maine Central Rd. Co.*, 92 Me., 476, the court construed the sections of the Maine law cited, and held:

"That the plaintiff corporation has its existence only by virtue of its charter and that its continued life for three years more under the general statute has expired. The plaintiff having no corporate existence can neither recover judgment nor suffer one against itself."

In the same case at page 482, the court says:

"Its charter ceased to exist. * * * It was dead, except so far as Sec. 24, c. 46, of R. S., continued its existence for three years, 'to prosecute and defend suits;' to settle and close its concerns; to dispose of its property; and to divide its capital."

In *Thornton* v. *Marginal Freight Ry. Co.*, 123 Mass., 32, construing a similar statute, limiting the time to three years within which affairs of a corporation could be wound up, the court held that a judgment recovered against the corporation after the expiration of three years was void. Chief Justice Gray, delivering the opinion of the court in that case, after reciting that it was a bill in equity to recover on a judgment against the corporation after more than three years had elapsed from the termination of the life of the corporation says at page 35:

"The judgment recovered by the plaintiff against the Marginal Freight Railway Company in July, 1875, was therefore wholly void, as if it had been rendered against a dead person."

The final claim made is that the creditors and stockholders of a defunct, foreign corporation have the same rights under Sections 8742, 11968 and 11969, General Code, as domestic corporations. Section 8742 is a part of Division 1, General Provisions,

Chapter 1, Organizations and Powers of Corporations. It can only refer to Ohio corporations.

In *Stetson* v. *City Bank of New Orleans,* 2 Ohio St., 167, Judge Ranney, delivering the opinion of the court, says at page 174:

"But in saying this we do not intend to deny that many of the provisions of these statutes are necessarily confined to corporations deriving their existence from our own laws. * * * The legislature having no extraterritorial power, must be presumed to intend to confine their operation to institutions within its jurisdiction."

In that case the action was brought before the corporate powers of the bank ceased. The court held that the suit could be prosecuted to judgment after the dissolution of the corporation.

Section 11968 provides that after dissolution a corporation may prosecute an action in and by its corporate name for the use of the party entitled to receive the proceeds thereof.

Section 11969 permits corporations to be sued by their corporate name after their dissolution.

The action in Cuyahoga county not having been brought in the name of or against the corporation, said sections of the statute do not apply.

The judgment of the superior court will, therefore, be affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and BUCHWALTER, J., concur.