DECISION
{¶ 1} Plaintiff-appellant Kristen Dever has appealed the trial court's order granting a motion to dismiss in favor of defendants-appellees Beth Casbeer, the Hamilton County Department of Jobs and Family Services, Dr. Ann Saluke, Michael Wilson, the village of Mariemont, Ohio, and Diane Potter.
 Background {¶ 2} This action is based on events that took place in 1987 and 1988. At that time, Dever was approximately four years old and lived in the village of Mariemont with her mother and father, Charlene and Frederick Dever. On October 21, 1987, Diane Potter, a neighbor of the Devers, reported to the Mariemont Police Department that she had overheard a conversation in the Devers' apartment. According to Potter, this conversation indicated that Fred Dever had been molesting his daughter.
 {¶ 3} As a result of Potter's report, the Mariemont Police Department began an investigation. Michael Wilson was the investigating officer. Wilson contacted Beth Casbeer, a social worker at the Department of Jobs and Family Services,[1] who assisted him in the investigation. They began their investigation by contacting Dever's mother and interviewing Dever herself. Dever's complaint alleged that Wilson had lied to her mother about the existence of three eyewitnesses to the molestation, and that both Wilson and Casbeer had ignored numerous statements from Dever that no abuse had taken place. After being interrogated by Wilson and Casbeer, Dever was taken to Children's Hospital and examined by Dr. Ann Saluke. Dever alleged that Saluke had also ignored Dever's proclamations of her father's innocence and insisted that Dever had been molested despite finding no physical evidence.
 {¶ 4} Dever's father was eventually indicted and tried for molesting Dever. Dever alleged that Wilson and Casbeer coerced her into testifying before the grand jury. Dever was told that if she failed to say that her father had molested her, she would not see her father for a long time. Dever further alleged that, during trial, Wilson, Casbeer, and Saluke all lied under oath and testified that Dever's father had molested her. Her father was convicted and incarcerated for most of Dever's life.
 {¶ 5} Dever's initial complaint named 22 defendants. After various motions were filed, Dever voluntarily dismissed all but the present six defendants-appellees and filed her first amended complaint. This amended complaint contained seven causes of action: a violation of Dever's civil rights under the Ohio Constitution; a violation of her civil rights under the United States Constitution pursuant to Section 1983, Title 42, U.S.Code; violations of Sections 1985 and 1986, Title 42, U.S.Code; defamation; assault; and the loss of her father's love, services, and consortium.
 {¶ 6} The trial court dismissed all Dever's causes of action for failure to state a claim upon which relief could be granted. Dever's appeal challenges only the dismissal of her first and second causes of action. A motion to dismiss based on Civ.R. 12(B)(6) should only be granted if, after reviewing the complaint, the court determines that the plaintiff can prove no set of facts that would entitle her to relief.[2]
The court must consider all the plaintiff's factual allegations to be true, and all inferences must be drawn in favor the plaintiff.[3] We review the grant of such a motion de novo.[4]
 Civil Rights Under the Ohio Constitution {¶ 7} Dever's first cause of action alleged a violation of her civil rights under the Ohio Constitution, although she did not specify which civil rights had been violated. After reviewing the record, we conclude that the trial court correctly dismissed this cause of action. For the reasons discussed below, each appellee was immune from suit.
 {¶ 8} Dever's factual allegations stemmed from Diane Potter's initial report of child abuse. Her contentions all related to the manner in which the investigation of this report was carried out. R.C. 2151.421 addresses the reporting of child abuse. At the time these events took place, R.C.2151.421(H) provided that "anyone or any hospital, institution, school, health department, or agency participating in the making of the reports, or anyone participating in a judicial proceeding resulting from the reports, shall be immune from any civil or criminal liability * * *." This statute provided immunity to certain people or groups involved in the reporting and the trial of child-abuse claims. Because Dever's alleged civil-rights violations stemmed from the report and investigation of a child-abuse claim, each appellee was immune from liability under former R.C. 2151.421(H).
 {¶ 9} Dever argues that this statute only provides immunity to those who act in good faith. Dever's complaint alleged that the various appellees acted with malice, ill will, and a lack of good faith; therefore, because this court must take all of her factual allegations to be true, Dever concludes that the malicious intent of the appellees prevented immunity from attaching as a matter of law. A careful reading of the law indicates that Dever is incorrect. R.C. 2151.421(G) is the current equivalent of former R.C. 2151.421(H). Under the current statute, immunity does require good faith. But we must apply the statute as it existed at the time the events took place. At that time, the statute contained no good-faith qualification. The Sixth Appellate District has ruled upon the absence of such a qualification when interpreting the prior statute: "because of the public concerns involved, the grant of immunity pursuant to R.C. 2151.421 must extend to anyone making reports of child abuse whether in good faith or not."[5]
Absence of a good-faith requirement was justified on the grounds of public policy. It encouraged the reporting of child abuse and enabled people to report such actions without a fear of repercussions. Because no good-faith requirement existed when these events occurred, each appellee had immunity and Dever's claim could not survive a motion to dismiss.
 Section 1983, Title 42, U.S.Code {¶ 10} Dever's second cause of action alleged a violation of her civil rights under the United States Constitution pursuant to Section 1983, Title 42, U.S.Code. This statute "is not itself a source of substantive rights."[6] Rather, it supplies "a method for vindicating federal rights elsewhere conferred."[7] To successfully bring such an action, one must show that "the conduct complained of was committed by a person acting under color of state law and * * * [the] conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."[8] In sum, for a Section 1983 claim to survive, there must have been a federal constitutional violation committed by a state actor. We discuss Dever's Section 1983 claim against each appellee in turn.
 {¶ 11} The motion to dismiss Dever's Section 1983 claim was correctly granted in favor of Diane Potter. Nowhere in the complaint was it alleged, nor was it indicated in the record, that Potter was a state actor. She was acting as a neighbor and as a citizen when she reported her suspicion of child abuse; she faced no liability for this cause of action.
 {¶ 12} Saluke's liability also hinged on whether she could properly be considered a state actor. We initially note that Dever's complaint did not allege that Saluke was a state actor. The complaint only stated that she was a doctor employed by Children's Hospital.
 {¶ 13} Three tests have been commonly utilized to determine whether a private person may be considered a state actor. The public-functions test considers whether the private person has performed an action typically reserved for the state.[9] This test provided no basis for Saluke's liability. She was a physician who performed medical examinations and provided medical treatment. Such functions are not typically reserved for the state. The state-compulsion test analyzes whether the private party's behavior was coerced or encouraged by the state.[10] Saluke also faced no liability under this test. The complaint and record were devoid of any allegations that the state had encouraged or coerced Saluke into conducting medical examinations on potential abuse victims. Dever also garnered no support from the nexus test, which "requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state."[11] Our review of the record provides no indication that a close relationship existed between the state and Saluke or that the two had executed any type of contract. We therefore conclude that no liability under Section 1983 could have been imposed on Saluke.
 {¶ 14} Our analysis next focuses on the village of Mariemont and the Hamilton County Department of Jobs and Family Services. A municipality may be subject to liability under Section 1983; however, "a municipality cannot be held liable solely because it employs a tortfeasor * * * or * * * on a respondeat superior theory."[12] Liability may only be imposed if the municipality or government body implemented a particular official policy that caused the injury suffered.[13] An official policy may be formal and written, or it may result from the decision to adopt a particular course of conduct.[14] But liability under the latter theory "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."[15]
 {¶ 15} Dever's complaint contained no allegations, and we find it difficult to believe, that either the village of Mariemont or the Department of Jobs and Family Services employed a policy encouraging its employees to fabricate investigations or to lie under oath. We pass no binding judgment on the veracity of these allegations. For our current purpose, we must only consider them to be true and accurate. But we do find it implausible that either body condoned such actions, let alone authorized them. Missing from Dever's complaint were allegations that the actual decisionmakers in this situation, Wilson and Casbeer, possessed final authority to establish policy for their respective agencies. The complaint contained insufficient allegations to hold either of these appellees liable under Section 1983, and we conclude that the trial court was correct in dismissing the Section 1983 claims against them.
 {¶ 16} The trial court dismissed Dever's Section 1983 claim against Casbeer on the ground of immunity. We agree with the trial court's decision. Before we begin our analysis, we note that Dever alleged a violation of her "civil rights protected by the Constitution of the United States." But Dever never specified exactly which of her civil rights had been violated. In her seventh cause of action, which is not at issue in this appeal, as well as in her appellate brief, Dever has argued that she was denied the affection, comfort, services, and consortium of her father. Because she has not cited any other cognizable civil right, we must assume that it was this loss of her father's consortium that she was referring to in her second cause of action.
 {¶ 17} Governmental witnesses have absolute immunity for their testimony at trial.[16] Public policy requires such a rule. "Subjecting government officials, such as police officers, to damages liability under Section 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties."[17] As a social worker, Casbeer was entitled to immunity from liability under Section 1983, and Dever had no recourse against Casbeer's allegedly false testimony.
 {¶ 18} But Dever's complaint also alleged that Casbeer had continued her investigation despite numerous denials of the molestation, and that she had coerced Dever into testifying falsely before the grand jury. Because these additional allegations did not directly involve Casbeer's testimony, they were not subject to immunity under the case law we have already discussed. But this has no effect on our conclusion. As we have already stated, Dever contended that she was deprived of the consortium and affection of her father. This alleged civil-rights violation stemmed from her father's conviction at trial. The conviction was the result of Casbeer's allegedly manufactured testimony, as well as the testimony of Dever herself, which she has now recanted. Therefore, although Dever's complaint contained numerous factual allegations about Casbeer, it was Casbeer's testimony that resulted in the conviction of Dever's father. Because Casbeer had immunity for her testimony, she faced no liability under Section 1983.
 {¶ 19} Wilson was entitled to immunity for these same reasons. As a police officer, his testimony was given special protection: Section 1983 "does not authorize a convicted state defendant to assert a claim for damages against a police officer for giving perjured testimony at the defendant's criminal trial."[18] The present case is distinguishable because it does not involve a convicted defendant bringing the action, but rather a child of the convicted defendant. But despite the particular plaintiff, the same rationale is applicable. Police officers cannot successfully carry out their duties if they are subject to suit for their testimony at trial.
 {¶ 20} Dever's complaint also alleged that Wilson had lied to her mother about eyewitnesses to the crime and had coerced Dever into testifying falsely before the grand jury. But these allegations did not lead to the breakdown in Dever's relationship with her father. It was solely Wilson's testimony at trial that resulted in the conviction of Dever's father. Our analysis must focus on Wilson's allegedly false testimony, which we conclude was protected by immunity. The trial court correctly dismissed the Section 1983 against Wilson.
 Conclusion {¶ 21} After a detailed and thorough review of the record, we conclude that the trial court was correct in granting the various appellees' motions to dismiss. Dever could prove no set of facts that would have entitled her to relief. The trial court's judgment is accordingly affirmed.
Judgment affirmed.
Doan, P.J., and Sundermann, J., concur.
[1] The Hamilton County Department of Jobs and Family Services has alternatively been referred to as the Hamilton County Department of Human Services throughout the litigation.
[2] O'Brien v. University Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, 245, 327 N.E.2d 753.
[3] Battersby v. Avatar, Inc., 157 Ohio App.3d 648, 2004-Ohio-3324, 813 N.E.2d, at ¶ 5.
[4] Id.
[5] Hartley v. Hartley (1988), 42 Ohio App.3d 160, 161,537 N.E.2d 706.
[6] Albright v. Oliver (1994), 510 U.S. 266, 271, 114 S.Ct. 807.
[7] Id.
[8] Parratt v. Taylor (1981), 451 U.S. 527, 535, 101 S.Ct. 1908.
[9] Ellison v. Garbarino (C.A.6, 1995), 48 F.3d 192, 195.
[10] Id.
[11] Id.
[12] Monell v. Dept. of Social Services (1977), 436 U.S. 658, 691,98 S.Ct. 2018.
[13] Id. at 694.
[14] Pembaur v. Cincinnati (1986), 475 U.S. 469, 480-481, 106 S.Ct. 1292.
[15] Id. at 481.
[16] Briscoe v. Lahue (1983), 460 U.S. 325, 342-343, 103 S.Ct. 1108.
[17] Id. at 343.
[18] Id. at syllabus.