CITY OF CINCINNATI, Appellee,

v.

YORK RITE BUILDING ASSOCIATION, Appellant.

[Cite as *Cincinnati v. York Rite Bldg. Assn.*, 164 Ohio App.3d 591, 2005-Ohio-6771.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050342.

Decided Dec. 16, 2005.

Julia L. McNeil, Cincinnati Solicitor, and Augustine Giglio, Assistant Solicitor, for appellee.

Newman & Meeks Co., L.P.A., and Robert B. Newman, for appellant.

GORMAN, Judge.

{¶ 1} The defendant-appellant, York Rite Building Association ("York Rite"), appeals from the summary judgment granted by the trial court in favor of the city of Cincinnati for costs and fines totaling $31,860.42 associated with the demolition of York Rite's condemned building. The trial court also overruled York Rite's cross-motion for summary judgment and dismissed its claim for the value of the razed building. York Rite challenges the adequacy of the city's notice of a nuisance hearing and the order to raze the building under the Due Process Clause of the Fourteenth Amendment. Because there is evidence in the record that the city's building department had actual knowledge of an interested party, Oliver Baker, representing York Rite, but did not notify him of the public hearing to declare the building a nuisance, of the city's decision that the building was a nuisance, or of the city's intent to raze the building, we hold that a genuine issue of material fact exists as to whether notice by the city, pursuant to Cincinnati Building Code ("CBC") 1101–57.2(1) through (5), was reasonably calculated to reach York Rite.

{¶ 2} York Rite is a corporation organized to maintain the building and real estate at 789 N. Shuttlesworth Circle, formerly the Avondale boyhood home of Ted Turner. Between 1992 and October 26, 2001, when the city boarded up the building, it served as the meeting place for the York Rite Widow–Son, Masonic Lodge 78. Oliver Baker testified in his deposition that he was a former master of the lodge and became the chairman of the York Rite in April 1992. The record is unclear, but according to Baker, York Rite became "inactive" some years ago because the lodge had been "dysfunctional for some time." [1]

{¶ 3} On July 2, 2001, as required by CBC 1101–57.2(2), the city's Division of Housing Inspections, Department of Buildings and Inspections ("building depart-

---

1. The record is silent concerning the status of York Rite's charter. However, Baker's testimony raises a question as to whether York Rite's articles of incorporation have been canceled, and therefore whether, under R.C. 1701.88(A), York Rite had standing to sue the city by counterclaim. See, e.g., *Superior Piping Contr., Inc. v. Reilly Industries, Inc.*, 8th Dist. No. 82567, 2003-Ohio-6347, 2003 WL 22806413.

ment"), sent by regular mail a "Notice of Violation" to York Rite at its 789 N. Shuttlesworth address. The building department obtained the owner's name and mailing address from the records of the county auditor. The letter advised that the building had been condemned. On July 11, 2002, the building department posted the notice on the building.

{¶ 4} On November 5, 2001, the building department sent by regular mail to York Rite at 789 N. Shuttlesworth Circle, and also posted on the building, a final notice advising that failure to bring the property into compliance with applicable law would result in a civil fine. On December 27, 2001, the building department mailed to York Rite at the same address and posted on the building a "Notice of Civil Offense and Civil Fine."

{¶ 5} In accordance with departmental procedure, the building department's division of housing inspections then referred the case to the building department's hazard-abatement project. On February 15, 2002, after all mail had been returned as undeliverable and when the building department had received no response to its notices, the building department's division of safety and maintenance sent by certified mail to York Rite at 789 N. Shuttlesworth Circle a notice of a public hearing scheduled for February 27, 2002, at 9:00 a.m. at City Hall to determine whether the building was a public nuisance requiring demolition. Copies were also posted on the building, and notice was published in the City Bulletin for two consecutive weeks. No one from York Rite attended the hearing. Following the hearing, the building department determined that the building was a nuisance. On March 11, 2002, it issued written findings of fact and conclusions of law and sent a copy by certified mail to York Rite at the Shuttlesworth address. A copy was subsequently posted on the building on March 17, 2002.

{¶ 6} On August 8, 2002, the hazard-abatement project sent by regular mail to 789 N. Shuttlesworth Circle a notice stating that the city intended to raze the building and to recover the costs of demolition from York Rite as provided by CBC 1101–57. The notice was returned "not delivered as addressed." Although the city awarded a contract to raze the building, on August 26, 2002, the city's department of community development advised the hazard-abatement project to suspend work on the building's demolition "until [the department has] had time to determine whether the [c]ity can assist the owners with the renovation of this site."

{¶ 7} On November 26, 2002, Baker met at the building with housing inspector David Lockhorn and representatives of the city's Department of Neighborhood Services to determine the feasibility of a government rehabilitation loan. On November 27, 2002, Baker met with an architect and Lockhorn at the building. Baker subsequently attended a meeting with Lockhorn and representatives of the

Department of Neighborhood Services to discuss the feasibility of renovating the building. On January 8, 2003, and without any notice to Baker of its intent to do so, the city tore down the building.

{¶ 8} On appeal, York Rite contends that, as early as February 2002, the city's building department had actual knowledge that Baker was representing York Rite, and it maintains that although the city knew Baker's address, it did not inform him of the public hearing of February 25, 2002, to declare the building a nuisance or of the notice, dated August 8, 2002, to raze the building. York Rite does not dispute that notices were regularly mailed, posted, or published in accordance with CBC 1101–57.2(1) through (5). Nor does York Rite contend that the ordinance is unconstitutional, as the trial court mistakenly believed. See *Cincinnati Metro. Hous. Auth. v. Morgan*, 104 Ohio St.3d 445, 2004-Ohio-6554, 820 N.E.2d 315; *Jones v. Gammarino* (Mar. 28, 1990), 1st Dist. No C–880747, 1990 WL 33723. Instead, it argues that there is a question of fact as to whether the city satisfied due-process requirements after it ostensibly had actual knowledge that Baker was the representative of York Rite. Therefore, York Rite argues, the trial court erred by entering summary judgment in favor of the city. We agree.

{¶ 9} A motion for summary judgment should be granted only if, after viewing the facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to a party opposing the motion, the trial court determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. See Civ.R. 56(C); see, also, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; *Rogers v. Sears, Roebuck & Co.*, 1st Dist. No C–010717, 2002-Ohio-3304, 2002 WL 1393666. Summary judgment is a procedural device to determine whether triable factual issues exist. The credibility of the witnesses is reserved for the trier of the facts, and in the review of a summary-judgment motion, any doubts must be resolved in favor of the nonmoving party. See *Murphy v. Reynoldsburg* (2001), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138. Review of the entry of summary judgment is de novo. See *Polen v. Baker* (2001), 92 Ohio St.3d 563, 564–565, 752 N.E.2d 258.

{¶ 10} "Due process requires that notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Foreclosure of Liens for Delinquent Taxes* (1980), 62 Ohio St.2d 333, 405 N.E.2d 1030, paragraph one of the syllabus, citing *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865; see, also,

*Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180. To determine whether notice was reasonably calculated to reach an interested party, it is necessary to examine each case upon its particular facts. *Regional Airport Auth. v. Swinehart* (1980), 62 Ohio St.2d 403, 16 O.O.3d 436, 406 N.E.2d 811.

{¶ 11} In construing the statutory notice provisions pertaining to the service of notice in tax-foreclosure actions, the Ohio Supreme Court has observed, "We are restricted to saying that the address used [for service of notice] must be such that a taxpayer may be 'reasonably calculated' to be in receipt of the notice. In situations where a taxpayer supplies officials with an address, it may be fairly presumed that the taxpayer can be reached at such address. Where * * * the official * * * had actual knowledge of a different, and, indeed, a *changed,* residence address, * * * we cannot say that notice would be 'reasonably calculated' to reach the taxpayer when mailed to the older residence now used as investment property." *In re Foreclosure of Liens,* 62 Ohio St.2d at 337–338, 16 O.O.3d 393, 405 N.E.2d 1030.

{¶ 12} In the present case, Baker submitted evidence to the trial court that the city was aware as early as February 2002 that he was York Rite's representative and that his address was reasonably ascertainable by the city. Baker testified that in February 2002, he "started the process" to apply for a loan from the city to rehabilitate the building at issue. Baker said he spoke with Albert Taylor, an inspector with the hazard-abatement project, and that he was referred to Taylor's secretary, who mailed loan information to Baker at his residence address. Baker testified, "I told her at that time I would be the person responsible for it, the contact person for the lodge." Baker's "Rental Rehabilitation Program Application" was dated March 11, 2002. The application listed York Rite as the owner of the building and Baker, 29 Shirely Drive, as the applicant. Baker contends that the city had actual knowledge that he was York Rite's representative even before he completed his application because, according to Baker, he had to give the city his name and address before March 11 in order to receive the application. Baker also testified that he faced some delay in processing his application.

{¶ 13} Possibly the most telling document establishing the date when the city may have first had knowledge that Baker was York Rite's representative was one of the city's exhibits to Baker's deposition. On March 28, 2001, almost a year before the building department sent notice of the public nuisance hearing, York Rite filed with the board of revision a request to decrease the auditor's valuation of its property at 789 N. Shuttlesworth Circle. The application form stated that William Brown, 3115 Borrman Avenue, was the agent for York Rite and designated the "contact person" as "(513) 961–6461 Oliver Baker."

{¶ 14} In support of its position that notice was properly given, the city contends that, consistent with its procedure, it determined the owner and the owner's mailing address by the tax billing address listed with the county auditor. We note that, pursuant to R.C. 323.13, the burden is on the owner to advise the county treasurer in writing of any change in the tax billing address. The city argues that information sent to a taxpayer at the address given by the taxpayer to the auditor is "reasonably calculated" to reach the intended addressee. See *Hall v. Parcels of Land Encumbered with Delinquent Tax Liens* (June 15, 1995), 10th Dist. No 94APE10–1463, 1995 WL 360287. But this case is distinguishable from both *Hall* and *Jones v. Gammarino,* supra, because York Rite contends that the city had actual knowledge that the building was not occupied and that Baker was York Rite's representative.

{¶ 15} It is undisputed that the city did not serve Baker with (1) the notice of the public hearing, dated February 15, 2002, (2) the findings and conclusions from the public-nuisance hearing, dated March 11, 2002, or (3) the notice of the city's intent to raze the building, dated August 8, 2002. Instead, the building department and its different divisions continued to send notice to a building that was known to be vacant. Whether and when the city had actual notice that Baker was York Rite's representative, and whether the city violated York Rite's right to due process, are disputed issues. It is curious that when the city initially filed suit on January 8, 2004, the caption of the complaint stated, "York Rite Building Assoc. of Hamilton Cty. [,] C/O Oliver Baker [,] 29 Shirley Drive [,] Cincinnati, Ohio 45217."

{¶ 16} Because there is evidence in the record to support York Rite's claim that the city had actual knowledge that Baker was York Rite's representative, it has presented a triable issue whether the notices satisfied due process. This issue is critical to the determination whether the city unlawfully razed the building at 789 N. Shuttlesworth Circle or whether the city is entitled to collect the costs of demolition from the York Rite Association as provided by R.C. 715.26 and CBC 1101.57. Consequently, we hold that summary judgment was not appropriate in this case.

{¶ 17} Therefore, the judgment of the trial court is reversed, and this case is remanded for trial or for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

DOAN, P.J., and PAINTER, J., concur.