DECISION. *Page 2 
{¶ 1} Plaintiff-appellant/cross-appellee, the City of Cincinnati, and defendant-appellee/cross-appellant, York Masons Building Association, both appeal a common pleas court judgment relating to the demolition of a building owned by York Masons. The central question in the appeal is whether the city provided adequate notice to York Masons that it planned to demolish the building. We hold that the notice was proper and that the city did not violate York Masons' due-process rights.
 I. Facts and Procedure {¶ 2} Hamilton County land records showed that property located at 789 North Fred Shuttlesworth Circle had been owned by "York Rite Building Association" since 1974. In 2002, the Hamilton County Auditor's records showed the tax mailing address for York Rite as 789 North Fred Shuttlesworth Circle.
 {¶ 3} In 1972, "York Masons Building Association of Hamilton County" filed its articles of incorporation as a nonprofit corporation with the Ohio Secretary of State. On August 11, 1983, the Secretary of State cancelled York Masons' status as a nonprofit corporation because it had failed to file a certificate of continued existence.
 {¶ 4} Beginning in January 1999, the city issued numerous building-code violations against the building. In July 2002, it sent a condemnation letter by ordinary mail to the address on North Fred Shuttlesworth Circle. An attachment to that letter stated, "Building is condemned. * * * You are ordered to promptly take down and remove building or to promptly cause the dangerous and unsafe *Page 3 
conditions to be remedied[.]" The letter also informed York Masons that it could appeal the order to the Board of Building Appeals within 30 days. The condemnation order was returned undelivered.
 {¶ 5} On March 28, 2001, York Masons, under the name York Rite, filed a request with the Hamilton County Auditor's office to decrease the auditor's valuation of the property. The application form designated "Oliver Baker" as the "contact person" and provided a phone number for him.
 {¶ 6} In July 2001, the city posted the condemnation order on the building, even though building inspector David Lockhorn knew that it was unoccupied at the time. The city sent a "Final Notice" by ordinary mail to the North Fred Shuttlesworth Circle address in November 2001 and received no response.
 {¶ 7} The building department subsequently referred the matter to the city's Hazard Abatement Program for demolition consistent with the Cincinnati Municipal Code. The city mailed a notice of hearing by certified mail on February 15, 2002. It also posted a copy of the notice on the building.
 {¶ 8} After the hearing, which no one from York Masons attended, the city mailed a notice of the decision to demolish the building by certified mail to the North Fred Shuttlesworth Circle address, even though Lockhorn knew the property was vacant. The city also posted a copy on the building and published it. The certified mail was returned undelivered.
 {¶ 9} On March 2, 2002, Baker applied in writing to the city's development department for a "rental rehabilitation" loan to renovate the building. He listed his name and home address on the application. *Page 4 
 {¶ 10} On August 8, 2002, the city posted a notice of "Intent to Raze by Government Action" on the vacant building. It also mailed the same document to 789 North Fred Shuttlesworth Circle. The notice was returned with no forwarding address. Al Taylor, an inspector for the Hazard Abatement Unit, also sent numerous notices to the building's address, which were returned undelivered. He posted several notices on the building even though he knew the building was unoccupied.
 {¶ 11} On August 26, 2002, Mike Hunley, an employee in the rental-rehabilitation section of the development department e-mailed David Edwards, an employee in the building department. He stated, "It is my understanding that a demolition contract has been awarded for this property; * * * It would be helpful if this contract could be suspended until we have had time to determine whether the City can assist the owners with the renovation of this site. I have assigned an architect to inspect the property and determine the work to be completed[.]"
 {¶ 12} The city mailed a certified letter to barricade the building to the North Fred Shuttlesworth Circle address on September 11, 2002, which was returned undelivered. It also posted the letter on the building. City employees secured the building for safety reasons in October 2002.
 {¶ 13} On November 25, 2002, an employee of the Office of Administrative Hearings communicated with Hunley. That employee stated, "I understand that you are dealing with York Rite on 789 N. Fred Shuttlesworth for the Rental Rehab program. I just want to let you know that they have unanswered fines and citations. We are in the process of collections with them and have not been able to get in contact with them." *Page 5 
 {¶ 14} The following day, Lockhorn met with Baker, as well as an architect and an employee from the rental-rehabilitation section, at the building to determine the feasibility of a rehabilitation loan. After Baker noticed heavy demolition equipment on the site, he asked why he had not been notified of the city's apparent intent to demolish the building.
 {¶ 15} The city denied the loan application after the architect failed to recommend the project. Lockhorn also attended another meeting in Hunley's office where they determined that "the numbers were not working real well for the project[,]" since the cost to renovate the building was approximately $500,000.
 {¶ 16} The city demolished the building on January 7, 2003. Before the demolition, the city mailed notice to 789 North Fred Shuttlesworth Circle and posted the notice on the building under Cincinnati Municipal Code 1101-57. It did not send notice to Baker.
 {¶ 17} The city then filed a complaint against York Rite seeking to recover $1,400 of fines incurred under the Cincinnati Municipal Code and demolition costs of $38,860. The city listed York Rite's address as "c/o Oliver Baker" at the address he had provided on the loan application. York Rite filed a counterclaim alleging a violation under Section 1983, Title 42, U.S. Code, because the city had not properly notified it of the demolition. It also contended that it was not obligated by statute to pay the demolition costs because of the lack of notice.
 {¶ 18} The trial court originally granted summary judgment in favor of the city. York Rite appealed, and in Cincinnati v. York Rite BuildingAssn., [1] we reversed *Page 6 
the trial court's judgment. We held that a genuine issue of material fact existed as to whether the city's notice had been reasonably calculated to reach York Rite.[2]
 {¶ 19} We stated, "Because there is evidence in the record to support York Rite's claim that the city had actual knowledge that Mr. Baker was York Rite's representative, it has presented a triable issue whether the notices satisfied due process. This issue is critical to the determination whether the city unlawfully razed the building at 789 N. Shuttlesworth Circle or whether the city is entitled to collect the costs of demolition from York Rite Association as provided by R.C. 715.26 and [Cincinnati Building Code] 1101.57. Consequently, we hold that summary judgment was not appropriate in this case."[3]
 {¶ 20} On remand, York Masons filed a motion to amend its counterclaim to correct its name in the pleadings. It stated that its corporate name was "York Masons Building Association of Hamilton County." It further stated that the Secretary of State had reinstated it as a nonprofit corporation on February 7, 2006. Over the city's objection, the court granted York Masons leave to amend, and from that date on, all filed documents identified the defendant as York Masons.
 {¶ 21} The trial court decided the case based on stipulations of fact agreed to by the parties. It found that the city's notice in this case was not constitutionally sufficient based on the "City's unique knowledge of Oliver Baker as an interested party and his address[.]"
 {¶ 22} The court granted judgment in favor of York Masons on its counterclaim under Section 1983, Title 42, U.S. Code and awarded it attorney fees. But it denied its request for prejudgment interest. The court also granted judgment *Page 7 
in favor of York Masons on the city's claim for the demolition costs. It granted the city's claim for unpaid fines "because there is nothing in record indicating that the City was aware of Mr. Baker as an interested party before the fines were assessed." This appeal followed.
 {¶ 23} We address the city's assignment of error first. In its sole assignment of error, it states that the trial court erred in granting judgment in favor of York Masons. It contends (1) that York Masons did not have standing to file its counterclaim, (2) that a distinction exists between a procedural-due-process claim against the city and one against a city employee, and (3) that the city did not deprive York Masons of due process. We find merit in some of the city's arguments.
 II. Corporation's Standing to Sue {¶ 24} First, the city contends that the trial court should not have granted York Masons' motion to amend the complaint because York Masons did not have standing to sue the city. It argues that York Masons was a nonentity because its articles of incorporation had been cancelled at the inception of the suit and that its reinstatement over 20 years later prejudiced the city. We disagree.
 {¶ 25} A corporation that has had its articles of incorporation cancelled continues to exist only for the limited purpose of winding up its affairs.[4] For any other action, the corporation is effectively "dead."[5]
 {¶ 26} But when a corporation has its articles reinstated following a period of cancellation, the corporation is a de facto corporation that can continue to operate *Page 8 
during the time between cancellation and reinstatement. A de facto corporation possesses all the power and authority of a de jure corporation, and only the state whose laws govern its formation may challenge its actions.[6]
 {¶ 27} Further, the reinstatement is retroactive to the time of the cancellation of the articles.[7] We find no cases setting a time limit on when the articles may be reinstated.
 {¶ 28} The city relies on a judgment entry from this court in which we held that a transfer of property to a defunct corporation nine years after the cancellation of its articles did not constitute winding up the corporation's affairs. Aside from a judgment entry's lack of precedential value, we do not find that case persuasive because that corporation never had its articles reinstated. A corporation's capacity to sue should be determined from the law and facts existing when the action is filed, "unless the corporation later seeksreinstatement."[8]
 {¶ 29} The decision whether to allow a party to amend a pleading lies within the trial court's discretion.[9] Given that York Masons was the same organization as York Rite and that the corporation had been a de facto corporation because its articles had been reinstated, we cannot hold that the trial court abused its discretion in granting York Masons' motion to amend its counterclaim. *Page 9 
 III. Section 1983 Claim {¶ 30} Next, the city contends that York Masons could not maintain its counterclaim under Section 1983, Title 42, U.S. Code because it only brought the claim against the city and not the city employees. We agree.
 {¶ 31} A Section 1983 claim may be brought against a municipality. But a municipality cannot be held liable solely on a theory of respondeat superior.[10] A court may only impose liability if the municipality implemented a particular official policy that caused the injury suffered.[11] An official policy may be formal or written, or it may result from a particular course of conduct.[12] But liability for a course of conduct "attaches only where the decisionmaker possesses final authority to establish the municipal policy with respect to the action ordered."[13]
 {¶ 32} The "official policy" requirement "was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[14] Where a city's policy "is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the `policy' and the constitutional deprivation."[15]
 {¶ 33} In this case, York Masons did not dispute that the city's notices were regularly mailed, posted, or published according to the notice provisions in the *Page 10 
Cincinnati Building Code, [16] and it did not contend that those provisions were unconstitutional.[17] In fact, it conceded below that "CBC 1101-57 is a facially valid ordinance." Further, the trial court specifically found that "[t]he City's method of providing notice is reasonably calculated under ordinary circumstances to reach interested parties and is constitutional on its face."
 {¶ 34} York Masons argues that the building department's uniform practice was only to notify property owners it could identify in the county auditor's records and to ignore all others. But the building department employees were not decision-makers with final authority to establish municipal policy. Because the city's policies and procedures were constitutional, it was not liable under Section 1983 for the acts of its employees. Consequently, the trial court erred in granting judgment to York Masons on its Section 1983 claim, and we reverse that part of the trial court's judgment.
 IV. Due Process {¶ 35} Finally, the city contends that the evidence did not show that York Masons was deprived of its right to due process. It contends that its notice procedures were reasonably calculated to provide notice and that Baker had actual notice that the building was going to be demolished. We agree.
 {¶ 36} Due process requires that notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and *Page 11 
to afford them an opportunity to present their objections.[18] To determine whether notice was reasonably calculated to reach an interested party, a court must examine each case upon its particular facts.[19]
 {¶ 37} The trial court analyzed the facts under Jones v.Flowers, [20] which the United States Supreme Court decided after the previous appeal in this case. In Jones, the Court, while noting that due process does not require actual notice, emphasized the need for "additional reasonable steps" where a property right would be extinguished and where the governmental entity has reason to doubt whether notice was effective.[21] The government must "consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case."[22]
 {¶ 38} But a significant difference exists between Jones and this case. In Jones, it was undisputed that the intended recipient never received notice. If York Masons had not received actual notice of the impending demolition, the state's knowledge of the failure of notice would have been relevant.[23] But York Masons did have actual notice.
 {¶ 39} A party cannot sustain a constitutional challenge to a notice requirement where that party possessed actual knowledge of the facts that formed the basis of the notice.[24] In this case, Baker, York Masons' representative, met city *Page 12 
representatives on the property, saw the demolition equipment, and specifically asked why he had not been notified of the impending demolition. Thus, he had actual notice of the demolition. That notice satisfied due process.[25]
 {¶ 40} As a general rule, a party's "ability to take steps to safeguard its own interests does not relieve the State of its constitutional obligation" to provide notice.[26] But once Baker, on behalf of York Masons, received actual notice that the city intended to demolish the property, it was incumbent upon York Masons to take some action to challenge the demolition, which did not actually occur until over a month later.
 {¶ 41} Consequently, we hold that York Masons was not denied its right to due process. Therefore, the city was entitled to recover its demolition costs under R.C. 715.26 and 715.261, as well as Cincinnati Building Code 1101-57.6. We reverse the trial court's decision granting judgment to York Masons on the city's claim for demolition costs. We remand the case to the trial court to enter judgment for the city on that claim and to determine the amount of the demolition costs.
 V. Prejudgment Interest {¶ 42} In its sole assignment of error, York Masons contends that the trial court erred in denying its request for prejudgment interest. The decision whether to grant prejudgment interest in a Section 1983 action lies within the trial court's discretion.[27] Even if we had upheld the Section 1983 judgment in York Masons' *Page 13 
favor, we could not have held that the equities of the case rendered the trial court's decision not to award prejudgment interest an abuse of discretion. But since we have reversed the trial court's judgment under Section 1983, York Masons is not a prevailing party entitled to prejudgment interest.[28] We overrule York Masons' sole assignment of error.
 VI. Summary {¶ 43} In sum, we sustain the city's assignment of error. We reverse the trial court's judgment in favor of York Masons on its Section 1983 claim. We also reverse the trial court's judgment in favor of York Masons on the city's claim for demolition costs. We remand the case for the court to enter judgment for the city on that claim and to determine the amount of the costs. Because York Masons has not challenged the trial court's judgment in favor of the city relating to the unpaid fines, we affirm that part of the trial court's judgment.
Judgment affirmed in part and reversed in part, and cause remanded.
SUNDERMANN, P.J., concurs.
PAINTER, J., dissents.
[1] 164 Ohio App.3d 591, 2005-Ohio-6771, 843 N.E.2d 250.
[2] Id. at ¶ 1.
[3] Id. at ¶ 16.
[4] R.C. 1701.88(A); Thomas v. Price (1999), 133 Ohio App.3d 585, 589,729 N.E.2d 427.
[5] Quality Interiors, Inc. v. American Mgt. Dev. Corp. (Dec. 7, 1990), 11th Dist. No. 89-T-4303; Weiser v. Julian (1921),15 Ohio App. 171, 180.
[6] Thomas, supra, at 589.
[7] R.C. 1702.60; Thomas, supra, at 590.
[8] Superior Piping Contractors, Inc. v. Reilly Industries, Inc., 8th Dist. No. 82567, 2003-Ohio-6347, ¶ 20; Benefit Mgt.Consultants, Inc. v. Gencorp, Inc. (May 22, 1996), 9th
Dist. No. 17488. (Emphasis added.)
[9] Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 5-6, 465 N.E.2d 377, modified on other grounds by Jim's Steakhouse, Inc. v. Cleveland,81 Ohio St.3d 18, 1998-Ohio-440, 688 N.E.2d 506; Heard v. Dubose, 1st Dist. No. C-060265, 2007-Ohio-551, ¶ 7.
[10] Monell v. Dept. of Social Services (1978), 436 U.S. 658, 691,98 S.Ct. 2018; Dever v. Casbeer, 1st Dist. No. C-050106, 2005-Ohio-5860, ¶ 14.
[11] Monell, supra, at 694; Dever, supra, at ¶ 14.
[12] Pembaur v. Cincinnati (1986), 475 U.S. 469, 480-481,106 S.Ct. 1292; Dever, supra, at ¶ 14.
[13] Pembaur, supra, at 481.
[14] Id. at 479.
[15] Oklahoma City v. Tuttle (1985), 471 U.S. 808, 824,105 S.Ct. 2427; Carpenter v. Meade (Mar. 3, 1994), 10th Dist. No. 93APE09-1306.
[16] Cincinnati Building Code 1101-57.2(1) through (5).
[17] York Rite, supra, at ¶ 8.
[18] Mullane v. Central Hanover Bank Trust Co. (1950), 339 U.S. 306,314, 70 S.Ct. 652; In re Foreclosure of Liens for Delinquent Taxes
(1980), 62 Ohio St.2d 333, 405 N.E.2d 1030, paragraph one of the syllabus.
[19] Akron-Canton Regional Airport Auth. v. Swinehart (1980),62 Ohio St.2d 403, 406-407, 406 N.E.2d 811; York Rite, supra, at ¶ 10.
[20] (2006), 547 U.S. 220, 126 S.Ct. 1708.
[21] Id. at 230.
[22] Id.; Chin Yi Tu v. Natl. Transp. Safety Bd. (C.A.9, 2006), 470 F.3d 941, 945.
[23] See In re Foreclosures of Liens for Delinquent Land Taxes, 4th Dist. No. 05CA35, 2006-Ohio-5417, ¶ 21.
[24] Palazzi v. Estate of Gardner (1987), 32 Ohio St.3d 169, 174,512 N.E.2d 971; In re Estate of Reiss (Mar. 6, 1991), 1st Dist. No. C-900053.
[25] See Thrower v. Akron, 9th Dist. No. 21153, 2003-Ohio-1307, ¶ 26; In re F.M., 8th Dist. No. 80027, 2002-Ohio-3900, ¶ 23; Hawkins Pro-Cuts, Inc. v. Garcia (Jan. 16, 1998), 2nd Dist. No. 16383.
[26] Jones, supra, at 232.
[27] Murphy v. Elko (D.Nev. 1997), 976 F. Supp. 1359, 1363. See, also,Wynn v. Gilbert, 1st Dist. No. C-060457, 2007-Ohio-2798, ¶ 44.
[28] See Cleary v. Cincinnati, 1st Dist. No. C-060410, 2007-Ohio-2797, ¶ 16-17.